ALBANY,<br>Dec. 1836.<br><br>Rowley<br>v.<br>Van Benthuysen.

---

ROWLEY, *appellant* and VAN BENTHUYSEN, *respondent.*

An *appeal* does not lie from an order of the chancellor refusing to vacate an order that a bill be taken *pro confesso,* and that the defendant have leave to put in an answer.

Cases on the subject of *reviewing* the decision of subordinate courts on questions of *practice,* questions resting in *discretion* granting or denying *interlocutory costs,* and granting, refusing, continuing and dissolving *injunctions,* examined and commented upon.

APPEAL from chancery. This was an appeal from an order of the chancellor *refusing to vacate an order* that the bill filed in this cause be taken *pro confesso,* and that the defendant have leave to put in and file an answer. The bill having been filed, a *subpœna* to appear and answer was served in October, 1832 ; the defendant did not cause his ap-

ALBANY,
Dec. 1836.

Rowley
v.
Van Benthuy
sen.

pearance to be entered until March, 1833, when a copy of the bill, with notice of an order to answer in forty days, was served upon him. The time to answer was enlarged, first by the assent of the complainant's solicitor, and subsequently by orders obtained by the defendant, until September, 1833, when the last order having expired, an order was entered taking the bill *pro confesso*. The cause was noticed for hearing at the several chancery terms, in May, August and October, 1834. In the latter term the hearing was postponed until 25th November, to afford the defendant an opportunity to make application to the court to vacate the order taking the bill as confessed, and for leave to put in an answer. On the day to which the hearing was postponed, application was accordingly made to vacate, &c. which was denied with costs, and on the same day the cause was heard on the bill and a final decree made. On the 12th December, the defendant prepared papers for a renewal of his motion to vacate, &c. which was made and heard in January, 1835, and again denied with costs. From the last order of the chancellor the defendant appealed.

The appeal having been *dismissed*, on the ground that the order of the chancellor, refusing to vacate, &c. was not *a proper subject of appeal*, it is unnecessary to state the excuses offered by the defendant for suffering the bill to be taken *pro confesso*, or the defence which he alleged to exist and which he prayed permission to put in. The case here was argued by

*B. F. Butler*, (attorney general of the United States,) for the appellant.

*S. Stevens*, for the respondent.

The following opinion was delivered by

Mr. Justice BRONSON. The first question to be considered in this case is, whether the court ought to entertain the appeal. The more regular course would have been for the respondent to have made a direct motion to dismiss the appeal ; but the question has been discussed by the counsel for both parties, and it is proper that it should be decided.

ALBANY,
Dec. 1836.

Rowley
v.
Van Benthuy-
son.

The order of the chancellor did not directly touch, although in its consequences it might affect the merits of the controversy. It was not made upon the right of the parties as disclosed in the pleadings, but in a collateral manner relating to th course of proceeding in the cause. In short, it was an order concerning the practice of the court, and upon a question addressed to the mere discretion of the chancellor. The line of separation is not always very strongly marked between questions which are purely of a discretionary character, and those which depend upon some established principle of equity jurisprudence. And the practice and principles of the court are so intimately connected, that it may sometimes be difficult to determine whether a particular order should be regarded as disposing of the right of the party, or merely regulating the course of proceeding in the cause. But in this case there can be no such difficulty. The order was not made upon the merits, nor was there any decision, either the one way or the other, concerning the matter of controversy between the parties. The appellant had suffered a default from which he wished to be relieved. His first motion, as was conceded on the argument, was very properly denied. He then made a second application, which was also denied ; and from that order he has appealed. The application was in both instances addressed to the mere discretion of the chancellor ; and on the second occasion it was so in a particular sense, because the motion had once already been made and decided.

For one, I am prepared to say that there can be no appeal where the decree of the chancellor does not directly touch the merits of the controversy. But whatever others may think of this rule, there is no precedent for sustaining this appeal, and it ought, in my opinion, to be dismissed.

It has been argued by all the members of this court who from time to time have expressed an opinion on the subject, that an appeal will not lie from every special order made by the chancellor in the progress of the cause : but no very successful effort has yet been made to establish any general rule on the subject. The cases, however, go far enough to

dispose of the question now under consideration ; and I think we ought not, by entertaining this appeal, to afford any encouragement for trying a similar experiment in future.

Costs in equity do not always follow the decree, as they do in most cases the final judgment at law, but they are said to rest in the discretion of the chancellor. It has for this reason been doubted, whether an appeal would lie for costs only, even where the question related to the general costs of the cause. In *Owen* v. *Griffiths*, 1 Ves. sen. 250, which was an appeal from a decree of Justice Abney, sitting for the *master of the rolls*, the rule was recognized by Lord Hardwicke, though he took a distinction in favor of the appeal in that particular case. In *Wirdman* v. *Kent*, 1 Bro. Parl. Cas. 141, it was decided by the *house of lords*, that an appeal would not lie for costs ; and the chancellor said that the case in Vesey, where the appeal for costs was admitted, was upon an apparent mistake, and where upon motion before enrolment, the minutes of the decree (made at the rolls) would have been altered. The same question was also decided in 1 Dow. Parl. Cas. 270, and may be regarded as finally settled in England. Sydney on Appeals, 29, note. The case of *Travis* v. *Waters*, in this court, 12 Johns. R. 500, goes very far to establish the same doctrine. And in *Eastburn* v. *Kirk*, 2 Johns. Ch. R. 317, which was decided two years afterwards, the chancellor says, " it is understood that an appeal will not lie merely for costs." In the late revision of the statutes, appeals from decrees " for the *general costs* of the cause." have been sanctioned. The revisers mention as a reason for adopting this new provision, that " in many cases the question of costs has become, from the length and expense of the proceedings, the most important point." Without stopping to inquire whether this is a sufficient reason, it may now, I think, be regarded as settled, that an appeal will not be entertained for *interlocutory costs*, nor would it lie for the general costs of the cause, but for the express provision of the new statute. The reason of the rule, that an appeal will not lie from a decree merely on the ground that costs are either given or denied, is very ma-

terial to the present inquiry. The review is not denied because the party may not be prejudiced by the order, but for the reason that the question of awarding or refusing of costs is addressed to the discretion of the chancellor. It depends on no settled or well defined rule of adjudication, but must be determined upon consideration of all the facts and circumstances of the case, including events which have transpired in the progress of the litigation, and which cannot always be brought to the notice of an appellate court.

In *Newkirk* v. *Willett*, 2 Johns. Cas. 413, and 2 Caines' Cas. Er. 296, the question was presented whether an appeal would lie from an order dissolving an injunction, but it was waived by the court, and the decree affirmed on the merits. In *McVicker* v. *Walcott*, 4 Johns. R. 510, it was held that an appeal would lie from an order continuing an injunction, and awarding costs after an answer denying the whole equity of the bill. Mr. Justice Spencer, who delivered the opinion of the court, relied on the language of the statute which provided that all persons *aggrieved* by any order or decree of the court of chancery may appeal from the same or any part thereof to this court. 1 R. L. 1801, p. 195, § 8. These decisions are supposed to have an influence upon the present inquiry, on the ground that the granting, refusing, continuing and dissolving injunctions are said to be questions addressed to the discretion of the chancellor. I cannot admit that this is, in all cases, a discretionary power, unless it can be maintained that the whole jurisdiction of the court of chancery is of that character. The means of administering preventive justice by the writ of injunction constitute a large and most valuable part of the power of the court. Bills are often filed for no other purpose than that of obtaining the benefit of this writ; and in other cases, the granting or refusing it may be equivalent in its consequences to a direct decision upon the whole merits of the litigation. Indeed, the motion to grant or dissolve an injunction (except in cases of culpable default) is always made upon the merits of the cause, as they are disclosed in the pleadings between the parties. The question certainly is not addressed to the arbitrary or unlimited

ALBANY,
Dec. 1836.

Rowley
v.
Van Benthuy-
sen.

discretion of the chancellor; but depends in general upon settled and well defined principles—principles which have been established by a long course of adjudication in courts of equity ; and the chancellor, in awarding or dissolving an injunction is no more at liberty to depart from approved precedents than is the judge who presides on the final decision in a court of law. The appellant can, therefore, derive no aid from decisions, that an appeal will lie from an order dissolving or continuing an injunction ; but on the contrary the doubt which formerly existed on that question, goes very far to show that this court will not entertain an appeal where the order complained of rested wholly in the discretion of the chancellor.

Appeals from the surrogate were formerly regulated by the same language as appeals from the chancellor. In *Taylor* v. *Delancy*, 2 Caines' Cas. Er. 143, it was held that the surrogate had a discretionary power to select one of the next of kin to the intestate in equal degree, and grant administration to that person to the exclusion of the others. The decree of the judge of probates, confirming the order of the surrogate, was affirmed by this court. Mr. Justice Spencer, who delivered the opinion of the court, remarked that he was "not disposed to say that there may not be cases where the exercise of a discretionary power, in an unjust and illegal manner, would not be re-examinable and relievable ;" but he admits that this was a doubtful question. In the case of *The Trustees of Huntington* v. *Nicoll*, 3 Johns. R. 566, the chancellor had made an order awarding a temporary injunction, and also an order for the examination of the guardians of an infant, as witnesses. An appeal was taken to both orders, which was dismissed, on the ground that there was no precedent for an appeal in such a case. In *Buel* v. *Street*, 9 Johns. R. 443, the appeal was from an order of the chancellor directing an attachment against the defendants for a contempt in disobeying a writ of injunction. All the judges agreed that there were a class of orders made by the court of chancery from which an appeal would not lie ; and on a direct motion for that purpose, the appeal in this case was dismissed by the una-

nimous judgment of the court. Mr. Justice Spencer, who had been disposed to go as far as any of his brethren in entertaining jurisdiction on appeals, called this a *practical order*, and concurred in the decision on that ground. Ch. Justice Kent remarked, that orders of one kind or other arise upon every material step taken in the progress of a suit in chancery ; and they become very frequent and numerous in a cause that is much litigated. Many of these orders relate to the process and *practice* of the court ; and to allow an appeal from every order would not only be absurd, but intolerably oppressive. Neither the constitution nor the statute, organizing this court, ever contemplated an appeal from any decree or order that did not involve a decision upon some matter touching the *merits* of the controversy ; for, upon every appeal, the chancellor is to be called upon to assign the reasons for his decision. If we examine the cases and precedents, we shall find that appeals have never been sustained upon any other.class of orders. He added, that, by sustaining appeals to the extent contended for in this instance, we should not only draw into this court the whole business of the court of chancery, before it had become ripe for discussion and decision there ; we should not only render the voice of that court mute and its process nugatory, but we should destroy ourselves. This court would become wholly incompetent to despatch the immensity of business which would flow upon it.

Although ˏthe court has not only stopped to consider whether the appeal should be dismissed on the ground of jurisdiction, or be affirmed on the merits, the decision of the chancellor has in no case been reversed, where the matter either rested in his discretion, or was a mere question of *practice*. Nor is there any adjudication that the court will entertain an appeal, where the order was not made upon some matter directly touching the merits of the controversy, unless the case of *Beach* v. *The Fulton Bank*, 2 Wendell, 225, is to be regarded as forming an exception to the rule. In that case the chancellor had denied with costs an application for the re-examination of a witness, and this court refused to dismiss the appeal without looking into the merits of the ques-

ALBANY;
Dec. 1836.

Rowley
v.
Van Benthuy-
sen.ˏ

tion. When the merits were afterwards examined, the order of the chancellor was affirmed. 3 Wendell, 573.

In *Williamson* v. *Hyer,* 4 Wendell, 170, an application was made for instructions to a master in relation to the examination of a witness who had refused to answer certain questions put to him by one of the parties. The motion was denied. A petition for a re-hearing of the motion was subsequently presented to the chancellor and denied with costs. From the last order an appeal was brought, which was dismissed on motion by the unanimous judgment of this court. Mr. Justice Marcy said, he could scarcely conceive of a case in which an appeal from an order of the chancellor, refusing a re-hearing, ought to be sustained. Such application is addressed purely to the discretion of the chancellor, and strong, indeed, must be the circumstances in such a case to induce this court to sustain an appeal. Ch. Justice Savage said he concurred, and especially for the reason that if the appeal was sustained, the statute limiting appeals from interlocutory orders to fifteen days would be evaded. In *Chapman* v. *Hammersley,* 4 Wendell, 173, the chancellor had ordered the property which was the subject of controversy to be sold, and the money brought into court to abide the event of the suit. The appeal was dismissed on the ground that the order was not made on the merits, but related only to the preservation of the property—it did not dispose of the rights of the parties.

The case relied on by the appellant, and it is the only one which has any bearing in his favor, is that of *Beach* v. *The Fulton Bank,* on the motion to dismiss the appeal, It is proper, therefore to see what were the facts upon which that case turned. Mr. Justice Marcy who delivered the leading opinion said, "We are, for the purpose of deciding this motion, to assume that *the witness,* in order to whose re-examination the defendants applied to the chancellor to have the proofs opened, *had been cross-examined in a proper manner to draw out the facts which they now wish to prove by him;* that since publication passed in the cause below, he has disclosed under oath in a suit at law, facts which he did not disclose on his examination in chancery,

material and pertinent to the defence of the appellants ; and that *a seasonable application was made for his further examination.* This is the case that the appellants declare they shall present to us on the appeal, and until we investigate its merits, we cannot say that it is not what they represent it to be." It must, I think, be obvious to every one that there is a marked distinction between that case and the one now under consideration. In that case there had been no *default* on the part of the appellants—they did not ask the chancellor to relieve them from the consequences of their own *negligence ;* and it was, therefore, very properly said by the judge, that the application was not made to the *favor* of the court below. He added, " I regard it as matter of *right*, that a party should have the full benefit of any defence he may have in a court of equity, which he has not waived by his acts, or *forfeited by his negligence.*" In the case now before the court, the appellant was in default. He had suffered the bill to be taken *pro confesso,* and a decree to be entered, and then applied to the chancellor to be relieved from the consequences of his own negligence. He did not go into court demanding a right, but to ask a favor. Whether he should be relieved or not was purely a question of discretion. There is no warrant for entertaining an appeal in such a case, and a precedent of that kind would, in my judgment, be one of most pernicious tendency. It would sanction a review in questions which depend upon no fixed principles of decision ; it would encourage a litigious spirit, which could not fail to overwhelm this court with a multitude of appeals ; and the delays and expenses of a chancery suit would become a most intolerable burden.

The supreme court exercises a superintending jurisdiction over inferior tribunals in cases where a *certiorari* or writ of error will not lie, by means of the writ of *mandamus.* But that writ is never awarded to control the court below where the question upon which it has passed was purely one of discretion. There are many cases in the books on this subject, but I shall only refer to a few which are much like the one under consideration. In *Ex parte,*

*Bacon and Lyon,* 6 Cowen, 392, the common pleas of St. Lawrence county had set aside a regular default against the defendant, on the ground of merits. A *mandamus* to the judges requiring them to vacate the order was denied. The court said, " the granting or refusing of such an application is governed by no fixed principles. No positive rule of law has been violated by the court below; nor can we fix bounds to their discretion on this subject." In *Ex parte Benson,* 7 Cowen, 362, the common pleas of *Oneida* had quashed an appeal on a motion taken by default. The default happened in consequence of the absence of the attorney attending another court, and his not recollecting the time when the motion was to be made. On showing these facts, the relator applied to the common pleas to open the default, and hear the motion on its merits, but his application was refused. A motion to the supreme court for a *mandamus* was denied. The court said, "Whether the common pleas would open the rule or not upon the facts disclosed rested entirely in their discretion—with which we have nothing to do." " Granting this motion would be a precedent for reviewing the whole non-enumerated business of every court of common pleas in the state." In *The People* v. *The Superior Court of New-York,* 5 Wendell, 125, Mr. Justice Sutherland defines the discretion, the exercise of which by inferior tribunals or officers, the court would not undertake to regulate or coerce.. " It is that discretion which is not and cannot be governed by any fixed principles or rules." This is a most exact definition of the discretion which the chancellor was called upon to exercise when the appellant attempted to excuse his default, and asked to be relieved from its consequences. The same rule prevails *elsewhere,* and it would be an anomaly in jurisprudence if an appellate court should entertain jurisdiction for the purpose of reviewing the proceedings of inferior tribunals in matters confided to their discretion. *Preston* v. *Ferrard,* 2 Bro. Parl. Cas. 179. *Davis* v. *Braden,* 10 Peters' R. 286.

If this were a mere question of expediency, and not one of principle, I should be against entertaining the appeal. No

ALBANY,
Dec. 1836.

Rowley
v.
Van Benthuy-
sen.

one who has been much conversant with courts of justice can fail to perceive that the worst consequences must result from an attempt to review the decisions of the chancellor on mere questions of practice; especially in cases like the present, where the practice of the court is not, and from the very nature of the case cannot be regulated by any fixed principles of adjudication. The parties to a suit in equity may now appeal from any decree made directly on the merits of the controversy, and there are often many such in the progress of the cause before it reaches a final determination. If to these we superadd appeals from orders relating merely to the course and practice of the court, no one could safely apply to that tribunal for redress, until he had first calculated the chances of life and estimated the amount of his resources. The defendant, whether called there justly or unjustly, could have no assurance of a more speedy release than that which terminates all our earthly concerns. To say nothing of the consequences which would probably result to this court, from entertaining appeals like the one now under consideration, I am persuaded that it would go far towards overturning the whole jurisdiction of the court of chancery. I doubt not that the officer who presides in that court, if he were to consult only his private feelings, would desire that all his decisions should be subject to review by another tribunal. Every conscientious judge must feel himself relieved from a great weight of responsibility by the consideration that his judgment is not final—that the errors which he may commit, through the infirmity of his nature, can be redressed in another forum. I cannot but think that considerations of this description had some influence upon the chancellor when he delivered his opinion in the case of *Beach* v. *The Fulton Bank*, on the motion to dismiss the appeal. As I read that opinion, he went further in favor of entertaining appeals than any case or *dictum* to be found in the books; and far enough, in my judgment, if the rule were carried out in practice, to produce the disastrous results to which I have alluded.

In this case we have nothing to do with the wishes of the officer whose judgment we are called upon to review. And

as a question of general jurisprudence, I think it cannot be controverted that a court of the last resort should not occupy itself in attempts to revise the practice of inferior tribunals. Why such a review in relation to the court of chancery should ever have been thought desirable, I am unable to determine. It is conceded on all hands, that it does not exist in relation to the supreme court. A writ of error to that court will only lie upon a final judgment, or upon some determination in the nature of a judgment, and equally final in its character. *Clason* v. *Shotwell*, 12 Johns. R. 31. And yet a multitude of questions no less extensive in their influence than that on which the chancellor has passed in this case, are disposed of at every special sitting of the supreme court. In a report which was made to the assembly in 1835, by the late chief justice, he stated that the number of special motions which had been heard and decided during the previous year exceeded thirteen hundred. If it be the dictate of a wise public policy to review the decision of the chancellor when he has refused to relieve a party from the consequences of his own neglect and default, why should we not amend the constitution and extend the principle to the decisions of the supreme court? And again why not remoddel our whole judicial system so as to be able to rejudge the discretion of every court and officer in this state? There is not a public officer, from the highest to the most humble, who is not sometimes called upon to exercise a discretionary power, more or less extensive in its influence; and yet no review, either by appeal or writ of error, has been provided. So long as our institutions fall short of absolute perfection, there must of necessity be some portion of official authority which cannot be accurately defined and regulated by law; and for this very reason it cannot be a fit subject for review in an appellate court. Should it be attempted, we must grope our way in the dark, without any legal landmarks to guide us to a right determination. It was said by Mr. Justice Van Ness, in the *Trustees of Huntington* v. *Nicoll*, 3 Johns. R. 566, that "a reasonable confidence in public officers is necessary to the very existence of civil government." And Chief Justice Kent remarked in

the same case, that "a reasonable confidence must be enter-
tained, that every court will exercise its discretion soundly."
If it can be doubted that these observations are just, still it
does not follow that we should entertain this appeal. The
question would then address itself to the legislature, or rather
to the people, for I cannot believe that the framers of the con-
stitution ever contemplated an appeal from any decree of the
chancellor which did not involve a decision upon some matter
immediately touching the merits of the controversy. I do not
mean a decision which in its *consequences* only may affect the
merits, for that would embrace every possible order that the
court could make. Indeed, it would include those orders
which are entered with the register as a matter of course and
without motion—in their *consequences* they affect the merits
of the cause. It is against the usual order taking the bill as
confessed for want of an answer, which is always entered
without motion, that the appellant is seeking relief in this
case. It is that order which has shut out what he deems a
good defence.

Before dismissing this question, I shall briefly advert to the
former and present constitution, and the acts of the legislature
relating to the jurisdiction of this court on appeals. It is al-
ways safe and not unfrequently useful, to go back to first prin-
ciples. The former constitution, art. 32, provided that a court
shall be instituted for the trial of impeachments and the cor-
rection of errors, " *under the regulations which shall be estab-
lished by the legislature.*" The first act upon the subject was
passed in 1784, 1 Greenl. 149. It was revised in 1801, 1 Web.
182, and re-published without amendment in 1813, 1 R. L.
132. The 8th section of the act of 1801 corresponds in sub-
stance with the 9th section of the act of 1784. It provides
" that all persons *aggrieved* by any sentence, judgment, decree
or order of the court of chancery or court of probates, may
appeal from the same, or any part thereof, to the said court
for the trial of impeachments and the correction of errors."
On looking into the cases it will be seen that some stress has
been laid upon the words that the court should be instituted
" under the regulations which shall be established by the

ALBANY,
Dec. 1836.

Rowley
v.
Van Benthuy-
sen.

legislature," and the enactment which followed, giving an appeal to all persons " aggrieved." But still this court, during the time of the old constitution, uniformly held that an appeal would n t lie from every order made by the chancellor in the progress of the cause; and no precedent can be found sanctioning an appeal in a matter relating meiely to the practice of the court or the discretion of the chancellor. In *Buel* v. *Street*, which is one of the latest cases under the former constitution, Chief Justice Kent said, " Neither the constitution nor the statute organizing this court, ever contemplated an appeal from any decree or order, that did not involve a decision upon some matter touching the merits of the controversy. If we examine the cases and precedents, we shall find that appeals have never been sustained upon any other class of orders." The words which formerly created some embarrassment in the consideration of this question are not contained in the amended constitution; nor is the provision re-enacted which gave an appeal to all persons aggrieved." Const. art. 5, § 1. 2 R. S. 166, art. 3. ib. 505, § 78, 79. I am not prepared to say that these changes have restricted the jurisdiction of the court, but I am at least warranted in saying that they have not enlarged it. Although the framers of the constitution did not attempt to define the precise limits of our jurisdiction, they used appropriate legal language which necessarily restricts our authority. The mere institutution of a *court for the correction of errors*, if nothing further had been said, would not have conferred unlimited powers. We could only review such errors, in matters of law or equity, as had usually been redressed in an appellate tribunal. But there is something more in the constitution on this subject. " When an *appeal* from a *decree* in chancery shall be heard, the chancellor shall inform the court of the reasons for his *decree*. And when a writ of error shall be brought on a *judgment* of the supreme court, the justices of the court shall assign the reasons for their *judgment*." Nothing but a " decree" brought up by " appeal" in the one case, or a " judgment" removed by " writ of error" in the other, can be reviewed in this court. This is legal language, and as no

contrary intention is manifested on the face of the instrument, it must be understood in its legal sense. It cannot extend to every decision of the inferior tribunal, but only to such decrees and such judgments as, on well settled principles, may be reviewed on appeal or by writ of error. If we examine the power of appellate courts anterior to the adoption of the constitution, we shall not find the slightest trace of authority for sustaining such an appeal as the one now under consideration. I know not, therefore, upon what principle it can be maintained that this court had jurisdiction to review the practice of the court of chancery in a matter wholly collateral to the subject of controversy. What is a decree in chancery? Like a judgment at law, it is the sentence pronounced by the court upon the matter of right between the parties; and this sentence is founded on the pleadings and proofs in the cause. None of the various orders which are so often made in the progress of the suit, for time to answer or produce witnesses, for leave to amend, setting aside a default, or the like, have ever been or can, with the least degree of propriety, be called decrees, within the meaning of that word as used in the constitution. A decree may be either final or interlocutory; but in either case it is an adjudication upon the merits, and not an order in relation to some collateral matter. It has never been supposed for a moment, that the decision of the supreme court on the motion to set aside a default, or the more important matter of granting a new trial, was a judgment which could be reviewed in this court; and yet there is, in my opinion, just as much authority for saying that a writ of error will lie in such a case, as there is for holding that this appeal can be entertained.

The objections to this proceeding may be briefly summed up as follows: *First.* The order of the chancellor was made on a mere question of practice, wholly collateral to the principal matter in litigation. *Second.* It was made on a motion addressed to the mere discretion of the chancellor. *Third.* This was not a decree upon, nor directly touching the merits of the controversy between the parties. I think there is no ground, either in principle or upon

authority, for sustaining this appeal, and in my opinion it should be dismissed.

Notwithstanding the decided opinion thus expressed, that the appeal ought to be dismissed, Mr. Justice Bronson reviewed the facts and circumstances submitted to the chancellor on the motion to vacate, and came to the conclusion, that *assuming that the defendant had a good and equitable defence* to some portion of the complainant's demand, he still had failed in excusing his default in not answering, and his negligence in not sooner applying for releif, and that therefore if the appeal was not dismissed, the order of the chancellor ought to be *affirmed*.

On the question being put, *Shall this appeal be dismissed?* the members of the court voted as follows:

*In the affirmative*—The PRESIDENT of the Senate, The CHIEF JUSTICE, *Justices* BRONSON and COWEN, and *Senators* ARMSTRONG, J. BEARDSLEY, BECKWITH, GANSEVOORT, HUNTINGTON, LACEY, LOOMIS, LOUNSBERRY, WILLES, 13.

*In the negative*—*Senators* DOWNING, EDWARDS, GRIFFIN, MAISON, SEGER, SPRAKER, 6.

Whereupon the appeal was DISMISSED.