ABRAHAM I. FORT, *Appellant,*
*vs.*
WILLIAM BARD and others, *Respondents.*

An appeal will not lie from a decision of the Court of Chancery upon a question of practice addressed to the discretion of that Court.

Where a defendant in the Court of Chancery suffered the bill to be regularly taken as confessed by him, and then, upon affidavits and papers excusing his default, and shewing, as his counsel claimed, a good defence on the merits, moved that Court to set aside the default and for leave to answer, and the Chancellor denied the motion; *held,* that no appeal would lie in such a case, and the appeal brought by the defendant from such a decision, was accordingly dismissed on motion.

MOTION by the respondents to dismiss the appeal. The facts are sufficiently stated in the opinion of the Court.

*J. Rhoades and S. Stevens,* for the motion.

*O. Clark and N. Hill, Jr.,* opposed.

*By the Court,* BRONSON, J. The appellant, who was one of the defendants in the Court of Chancery, suffered the bill to be regularly taken *pro confesso* against him; and then, on affidavits and papers which, as his counsel insist, fully excused the default, and showed a good defence on the merits, moved the Court to set aside the default, and allow him to defend the suit. The Chancellor made an order denying the motion with costs; and from that order the appeal is brought. The case of *Rowley vs. Van Benthuysen,* (16 *Wend.* 369,) is a direct authority for saying, that an appeal will not lie in such a case. It was a question of mere practice, addressed to the discretion of the Chancellor; and whether he decided right or wrong is not a question for review. Although the late Court of Errors was disposed to enlarge its jurisdiction, and did not always follow its own decisions, it has never held, so far as I can learn, that an appeal would lie from an order refusing to open a regular default. On the contrary, that Court has often re-

cognized the case of *Rowley vs. Van Benthuysen* as laying down the rule by which it intended to be governed; and has applied it in matters of more importance than the granting or refusing motions to open defaults. (*Rogers vs. Hosack,* 18 *Wend.* 319; *Rogers vs. Holley, id.* 350.) It is true, that in *Tripp vs. Cook,* (26 *Wend.* 143,) one Senator expressed his disapprobation of the decision in *Rowley vs. Van Benthuysen;* but so far as appears, no other Senator agreed with him in opinion. And though the Chancellor took occasion to say, that appeals should be allowed in every case not manifestly frivolous, it will be seen that he spoke as the officer, and in view of consequences which might result to the Court of Chancery; and not as a member of the Court of Errors.

The Court of Errors has, on several other occasions, followed the case in the 16th Wendell; but the decisions have not been reported, for the reason that the question was already settled. In *Jewett vs. The Farmers' Loan and Trust Company,* the Chancellor, on motion of the complainants, ordered the defendant's answer to be taken off the files of the Court as irregular, and that the bill be taken *pro confesso* against him; and from that order the defendant appealed. After hearing his counsel, the Court of Errors dismissed the appeal, on the ground that the point decided by the Chancellor was a question of practice, resting in discretion, and not subject to review in another Court. This was in September, 1843. Two other appeals were dismissed at the same time, and on substantially the same ground. I recollect that in another case, and on another occasion, the Court dismissed an appeal from an order resting in the discretion of the Chancellor. The opinion of the Court was written by me; but I have not been able to find it since this motion was argued, nor is the name of the case recollected. I have been furnished by the State Reporter with a note of the case of *Mumford vs. Sprague and others,* where the Court of Errors in December, 1846—its last sitting—again held the same doctrine. I have been thus particular in referring to cases, because the appellant's counsel seemed to suppose that the decision in *Rowley*

*vs. Van Benthuysen* had been overruled by the Court which made it.

The matter stands as strong, upon principle, as it does upon authority.  Within certain prescribed periods, a party who has been sued, either at law or in equity, has a right to appear and make his defence.   It is a strict legal right, of which he cannot be deprived.   But when that time has expired, and his default has been entered, the legal right is at an end; and if he wishes to be heard, he must ask it as matter of grace and favor.   The motion for leave to plead or answer is addressed to the discretion of the Court, and may be granted or refused as the ends of justice seem to require.   It should never be granted unless the party has a good defence on the merits, and the omission to plead or answer in due time was the result of accident or mistake, without any culpable negligence on his part.   And whether the motion is granted or refused, the decision is final, so far as relates to a Court of review.

But we have been told in this case, what I have often heard when sitting in the Supreme Court on motions for writs of mandamus and certiorari to inferior Courts and officers, that if a review is refused, those Courts and officers, under color of exercising their discretion, will make arbitrary, unjust and oppressive decisions.   To such arguments it was answered long ago by Van Ness, J., "we are not to presume that a public officer will corruptly exercise the power with which he is invested for the public good; and much less ought we to found a decision upon odious and disreputable presumptions against the integrity of a judicial officer.   A reasonable confidence in public officers is necessary to the very existence of civil government."   And Kent, C. J., said in the same case, "a reasonable confidence must be entertained, that every Court will exercise its discretion soundly."   (*Trustees of Huntington vs. Nicoll,* 3 *Johns.* 566.)   Although a wise people should be careful not to go too far in that direction, they must of necessity confide some discretionary powers to all public functionaries, executive, legislative and judicial.   This results from

the very nature of representative governments. It is impossible to set down or specify in detail what shall be done under all possible circumstances. Something must be trusted to the good sense and honest purpose of the agent. Any one who will give himself the trouble to reflect on the subject, will find that there is scarcely a public officer in the State, from the highest to the lowest, who does not exercise some powers which are beyond the reach of judicial review. And this is especially so in relation to Courts of justice. They dispose of many questions daily, where there is no appeal. And it must be so. The questions are for the most part such as cannot be fully and intelligibly presented to an appellate Court. And besides, no community could endure the army of Judges which would be necessary, and the endless litigation which would follow if every decision in relation to the mere practice and proceedings of the Court might be carried from Court to Court by appeal.

The reason assigned by the Chancellor for denying the motion was, that the defendant asked the favor of having the default opened, for the purpose of setting up as a defence a violation of the restraining law by the corporation to which the mortgages had been given, and for the foreclosure of which the bill was filed, without repaying the money which he had actually received from the company. But it is not a matter for inquiry here what considerations governed the mind of the Chancellor in denying the motion. It is enough that it was a question addressed to his discretion.

Appeal dismissed.