The Chancellor.
I do not feel myself at liberty to grant a preliminary injunction in this case. There are important principles of law, as well as important facts, involved in the issue. The object of a preliminary injunction is to prevent some threatening, irreparable mischief, which should be averted until opportunity is afforded for a full and deliberate investigation of the case. The defendants have purchased the farm, and removed the paupers, and have nearly completed an expensive building on the premises. To interrupt the progress of the defendants in completing their *626 building, can be of no advantage to the complainants; such interference might greatly injure the defendants, in a pecuniary point of view, by interfering with their contract for buildings, and in other respects. It is not the building which the complainants regard as a nuisance, but the use to which it is to be applied. To compel the defendants to provide some other place for the accommodation of the paupers during the pendency of this suit, and until their rights are finally determined, would, necessarily, expose them to great inconvenience and expense. On the contrary, if matters are permitted to remain as they are, until final hearing, it can be, at the worst, but an inconvenience to the complainants, temporary in its character. The delay of -the complainants in not making an earlier application to thejcourt, has placed the defendants in a situation in which they should not be disturbed until their rights, which the complainants question, are finally determined. There is another reason why I do not feel myself at liberty to interfere now. It is admitted by the parties that the questions involved in this controversy are now before a court of law. The defendants have been indicted in the county of Bergen for erecting and maintaining the nuisance, which it is the object move. The questions of law and of fact are of this suit tó re-before the proper and appropriate tribunals. It is true the defendants do not interpose any objection to the jurisdiction of this court, on the ground of the pendency of this indictment. Nevertheless, the proceedings at law may be noticed by the court for its own satisfaction. If a pure question of law was involved —for instance, whether the defendants have any right under their charter to purchase and hold the farm without the territorial limits of their city — this court would not settle that question. It would have no right to settle it. It would be a proper question to be determined by a quo warranto, or in some other legal way. Attorney-General v. Utica Ins. Co., 2 J. C. R. 371. It is the special grievance to the complainants that justifies the interference of this court. Caning and others v. Lowerre, 6 J. C. R. 439. But as to the questions, both of law and of fact, the court may ask, or may *627 wait for, the action of another tribunal. If there is difficulty as to the law involved, the court may hold the case, and send the party to a court of law to determine the legal controversy; or, if the facts are complicated and difficult, an issue may be awarded to try them. In this case there are many nice and important questions of law, as well as the one of fact, whether a nuisance or not. There appears to me, therefore, a propriety in this court’s waiting for the decision of the case at law. Should it be determined that the defendants have a right to establish a “poor-house” without their territorial limits, that terminates this controversy; for the complaint is not to the manner, but as to the right of the defendants carrying out their projects.
The injunction is refused, but without costs. The complainants may wait, and renew their application for injunction after the indictment is tried, or may proceed with this case to final hearing.
Green, C. J. The bill asks an injunction to restrain the city of Paterson from erecting a building for a poor-house, and from keeping their paupers and vagrants in any building upon a farm owned by the city in the township of Saddle Eiver, in the county of Bergen. The complainants, upon filing the bill, asked a temporary injunction. Time was allowed to the defendants to file an answer. Upon the coming in of the answer, the temporary injunction was denied, without costs. From that order the complainants have appealed.
Several important questions of law and fact are involved in the controversy, and have been ably discussed upon the argument, viz.: Whether a city or town may establish a poor-house without its own territorial limits. Whether a poor-house, established in a populous neighborhood, be in itself a nuisance. Whether this particular poor-house is so conducted as to be a nuisance.
The Chancellor decides neither of these questions. He simply declines to interfere by a temporary injunction. He intimates, indeed, that the questions of law and of fact should be settled in a court of law, before the allowance of an in *628 junction. But his decision is simply that he will not grant a temporary injunction before the final hearing of the cause.
The granting or refusal, of the temporary injunction, during the pendency of the cause, was a matter of discretion with the Chancellor. It concluded no right of the p irties, or of either of them. The order is in no sense a final order. Costs are not adjudged. It is not an order from which an appeal will properly lie. Garr v. Hill, 1 Halst. Ch. R. 639; Trustees of Huntington v. Nicoll, 3 John. R,. 566.
Clearly, no irremediable injury can result!from a denial of the injunction, nor can the subject matter in controversy be withdrawn from the jurisdiction of the court.
No opinion whatever is designed to be expressed or intimated upon the merits of the ease. The Chancellor has expressed none. He has simply declined, in the exercise of his discretion, to use the restraining power of the court before the cause is heard upon the merits. In do perceived that he exercised his discretion un ng so, it is not wisely or injudiciously. If the case were otherwise, it is 3ot a proper case for the interference of this court. We may rot in such a case substitute our opinion for> the discretion of the Chancellor, without needlessly and wrongfully trenching' upon the rights and powers of that court.
The appeal should be dismissed.
Order accordingly.
Potts, J. The bill in this case sets out tíjiat the president' and council of the city of Paterson had purchased a farm in Saddle River, and were engaged in erecting on it a poorhouse, or poor and work-house, in which they intended to keep the paupers chargeable, and that should become chargeable, upon that city, and the idle and dissolute persons and vagrants of the same, and to put them to work and labor there, and confine them for punishment as yagrants, and to pass by-laws and rules for the regulation and government of said institution; and that they had removed and were keeping paupers, &c., there; that they claim an exemption of the said land and establishment from taxation, and that the *629 sending, keeping, and maintaining paupers, &c., there, will be a great injury and nuisance, and a public wrong to the inhabitants of said township of Saddle River, and said county of Bergen, &c., and praying relief and an injunction, &c.
The bill was directed to be filed, and time given to the defendants to put in an answer; and an answer and affidavits were subsequently filed, admitting the purchase of the land, and that they were erecting a building on it to be used as a poor-house, &c., but denying that it would be an injury, nuisance, or public wrong, and claiming right under their charter to erect and maintain such poor-house, &c.
The Chancellor, on argument, made an order refusing a preliminary injunction, whereupon this appeal was taken to this court from said order.
Whether the city of Paterson has a legal right, under the provisions of her charter, to buy lands, and erect, maintain, and govern a poor-house thereon out of her territorial limits and within the bounds of another township and county; and whether the erection and maintenance of such an institution, at such place, and under such circumstances, is a public wrong, injury, and nuisance which the Court of Chancery has power to prevent, are questions which have been ably and elaborately argued on both sides before the court.
But it is very clear that this court cannot, in this collateral way, undertake to decide the whole merits of this case, as presented in the bill, answer, and affidavits. The Court of Chancery has not done so. The cause was not before that court upon final hearing. The testimony was not taken; the cause was not ready for hearing. The motion argued before the Chancellor was a motion for a preliminary injunction pending the suit. That motion alone was decided; and the only question with which we have now to deal is, whether the order refusing a preliminary injunction was erroneous ; for to warrant a reversal upon appeal from chancery, some definite rule of law or equity must appear to have been violated. Garr v. Hill, 1 Hal. Ch. R. 639; Rogers v. Hosack’s Ex’rs, 18 Wendell 329.
Indeed, so narrow is the question that usually comes up by *630 appeals from interlocutory orders of the Court of Chancery, so exclusively is the appellate court confined to the simple merits of the order itself, that repeated efforts have been made to define with precision the exact lir e between orders that are appealable, and orders that are not appealable. This is no easy task, nor has it been entirely accomplished. The statute (Rev. S. 921, § 80,) says that all persons aggrieved by any order, &c., may appeal. But this language must have a legal construction; and hence this court held, in the first case above cited, that the party must, in a legal sense, be aggrieved. The order must be one which touches the merits of the question in the cause, and affects'the rights or interests of the party. And so it has been hell that orders relating merely to questions of practice, as an order for the examination of a witness, saving all just exceptions, is not appealable, Huntington v. Nichol, 3 Johns', R. 566; or for an attachment to answer touching an alleged contempt, Bruce v. Street, 9 Johns. R. 442; nor does an appeal lie from a decree made upon a default at the hearing, Sands v. Hildreth, 12 Johns. R. 493. In Bruce v. Street, Chancellor Kent, delivering the unanimous opinion of |the Court of Errors of New York, said : “It has been frequently admitted in this court, that there is a class of orders i i chancery which are not objects of appeal. But there never has been any precise and definite line drawn between that class of orders which are, and that class which are not, the ground of appeal. Every person of sense and reflection will at once perceive that such a distinction does, and must exist. Orders of one kind or other arise upon every material step taken in the progress of a suit in chancery; and they become very frequent and numerous in a cause that is much litigated. Many of these orders relate to the process and practice of the court, and to allow an appeal from every order would not only be absurd but intolerably oppressive/ It never was contemplated, he says, to allow an appeal from any decree or order which did not involve a decision upon some matter touching the merits of the controversy. And so *631 it has also been held that an appeal does not lie upon a question as to interlocutory costs merely, or from a decree for costs, which rests in the discretion of the court. Winslow v. Collins, 3 Paige 88; Hunt v. Wallace, 6 Paige 371; Travis v. Waters, 12 Johns. R. 500; Rogers v. Hally, 18 Wendell 350.
Of course this rule does not apply in a case where the allowance or refusal of costs is governed by statute or a standing rule of court, or is a matter of strict right. Buloid v. Miller, 4 Paige 473.
It is, perhaps, impossible to run the discriminating line through the whole class of interlocutory orders, so as to establish a permanent and inflexible rule, but by applying to each case the principles referred to as settled, an approximation may be made to it.
As to the question whether orders granting, refusing, continuing and dissolving injunctions, are properly within the class of appealable orders, Mr. Justice Bronson, in the case of Rowley v. Benthuysen, 16 Wendell 373, said, “I cannot admit that this power of injunction is, in all eases, a discretionary power, unless it can be maintained that the whole jurisdiction of the Court of Chancery is of that character. The means of administering preventive justice by the writ of injunction constitute a large and most valuable part of the power of the court. Bills are often filed for no other purpose than that of obtaining the benefit of this writ; and in other cases the granting or refusing it may be equivalent in its consequences to a direct decision upon the whole merits of the litigation. Indeed, the motion to grant or dissolve an injunction, except in cases of culpable default, is always made upon the merits of the cause, as they are disclosed in the pleadings between the parties. The question certainly is not addressed to the arbitrary or unlimited discretion of the Chancellor, but depends in general upon settled and well-defined principles- — principles which have been established by a long course of adjudication in courts of equity — and the Chancellor in awarding or dis *632 solving an injunction is no more at liberty to depart from approved precedents than is the judge who presides on the final decision in a court of-law.”
to be correct, it refusing, continu- ' But admitting these general principles does not follow that every order granting, ing or dissolving an injunction is appealable; For the rule applies to this as well as to any other class of orders, that to constitute a ground of appeal the paijty appellant must, in a legal sense, be aggrieved by the order — it must be an order which touches the merits of the question in the cause, and affects the rights or interests of the; party. In cases within this rule, this court has, I believe, uniformly entertained these appeals, and either affirmed or reversed the order appealed from; and where the order brought up has not been cpnsidered as coming within the rule, the appeals have been dismissed. Att’y-Gen’l v. Paterson and Hud. Riv. R. R. Co., (not reported); Mulford v. Mirick, (not reported); Carr v. Hill, (before cited). The first question then is, whether the order made, refusing a preliminary injunction in this case, is appealable. Are the appellants aggrieved in a legal sense by it? Does ijt touch the merits of the question in the cause? Are the rights and interests of the appellants affected by it ? An primary object of the bill. If the complainants are entitled to any relief, they are entitled to this. injunction is the If, upon the case made, the erection and maintenance of this poor-house is a wrong done to them, this is the redress to which they are entitled — the remedy for the wrong. The mischief must be restrained, and this is the meats of restraining it with which the Court, of Chancery is armed. It is not merely the building of a house in Saddle River that is complained of, but the keeping of paupers there — and this, if a nuisance at all, is a present, existing, continuing nuisance. The refusal of a preliminary injunction, then, does touch the merits of the cause; it is the refusal of a present relief against a present mischief; and the appeal is not liable to' be dismissed.
Then, the remaining question is, wheth jr the order of the *633 Chancellor refusing a preliminary injunction was erroneous. And here we must recur again to the narrow limits of the question presented by this appeal. It is not whether the complainants are right or wrong upon the questions involved in the case made upon bill and answer — not whether Paterson has a right to establish and maintain her poor-house in Saddle River- — nor whether it is a nuisance; but whether the Chancellor, in the decision he has made refusing this order, has violated any well-settled and established rule of equity.
I think it very clear that he has not.
First. Because, upon the ease before him in the bill, answer, and affidavits, no case of threatening, irreparable mischief is made out.. That was the only question he had to decide upon the motion for a preliminary injunction — in advance of the hearing of the cause, and before the case was in a situation to be decided upon the merits. Where it does not appear that irreparable mischief is liable to ensue from leaving a party to go on exercising a right he claims, the court never stops him before it has an opportunity of examining the question of right. To do so would be unnecessarily to prejudge the case before a full hearing on its merits— and so are the authorities. 2 Story’s Eq. Jur., § 924 ; Earl of Ripon v. Hobart, 3 Mylne & Keene 169; Kane v. Vanderburgh, 1 John. Ch. R. 12; Jerome v. Ross, 7 John. Ch. R. 315, 336; Columbia Steamboat Co. v. Wildrin, Hal. Dig. 532, § 2; Quackenbush v. Van Riper, 2 Green's Ch. R. 350; West v. Walker, 2 Green's Ch. R. 279; Van Winkle v. Curtis, 2 Green’s Ch. R. 422; Morris Canal and Ranking Co. v. Soc’y for Est. U. M., 1 Hal. Ch. R. 203. The mere erection of a house intended as a poor or poor and work-house is, in itself, no injury to anybody, if the intention be never carried out. Nor is the sending of paupers into a township or county illegally, or keeping them there a few months, a case of irreparable mischief.
Second. In the second place, it appeared in this case, before the Court of Chancery, that the questions involved were, at the time the preliminary injunction was applied *634 for, pending before a court of law. The maiD question in the cause is essentially a question of law. And the rule has been long established, that in such cases ja court of equity does not interfere by injunction until the question of right is 2 determined. Att’y-Gen. v. Nichols, 16 Ves. 338; Att’y-Gen. v. N. J. R. R. Co., 2 Ves v. Clever, 18 Ves. 211; Att’y-Gen. v. N. Green’s Ch. R. 140. Upon both these grounds the order refusing the injunction was right, and the order of the Chancellor should be affirmed. j
Decree of Chancellor affirmed unanimously.
Cited in Coryell, Ex., v. Holcombe, 1 Stockt. 650; In the matter of Anderson, 2 C. E. Gr. 538; Camden and Amboy R. R. Co. v. Stewart, 6 C. E. Gr. 486; Morgan v. Rose, 7 C. E. Gr. 594; Black v. Del. & Rar. Can. Co., 9 C. E. Gr. 489 ; Citizens’ Coach Co. v. Camden H. R. R. Co., 2 Stew. 304.