## The Trustees of Iowa College v. The City of Davenport.

An appeal lies from an order of the district court dissolving an injunction, where the dissolution of the injunction affects the merits of the cause, or where the order involves an adjudication upon any of the material questions in the controversy.

An order of the district court dissolving an injunction, restraining a municipal corporation from proceeding to appropriate certain land for the purposes of a street, and from opening and working the same, while an appeal from the action of a jury condemning the land, and allowing the owners no damages, is pending, and until the same shall be tried and determined, so far involves the merits of the cause, that the order may be appealed from.

Where the owners of real estate appeal to the district court, from the action of a jury, allowing them no damages, by reason of the appropriation of their land for the purposes of a street, they are entitled to an injunction to restrain the appropriation of the land, and the opening of the street, while the appeal is pending, and until the same is determined. (WRIGHT, C. J., dissenting.)

The Trustees of Iowa College v. The City of Davenport.

*Appeal from the Scott District Court.*

MONDAY, NOVEMBER 8.

Bill for an injunction to restrain the city of Davenport, from opening a street, through the lands of petitioners, until an appeal taken by them, from the action of a jury summoned to assess their damages, by reason of the appropriation of the land, shall be tried and determined. The injunction was granted in vacation, by Judge WOODWARD, of the supreme court, and dissolved by the district court, at its next session thereafter, on motion of the respondent. From the order dissolving the injunction, the complainants appeal. The facts necessary to an understanding of the questions determined, are fully stated in the opinion of the court.

*James Grant,* for the appellants. [No brief of the attorney for the appellants, was found upon the files.]

*Cook, Dillon & Lindley* for the appellee.

1. The appeal of the complainants from the order of the district court, vacating the injunction should be dismissed, because the injunction was granted by Judge Woodward, in vacation of the district court, as provided by sec. 2191 of the Code. The district courts in this state, have exclusive original jurisdiction in granting injunctions; and when not in session, and any judge of the supreme court grants the injunction, he is to be regarded as acting for the district court. When the matter comes before the judge of the court, at its next sitting, it is discretionary with him, whether such injunction shall be granted and continued, or vacated; from the exercise of such discretion, there is no appeal. *Van Dewater* v. *Kelsey,* 3 Howard Practice Reports, 339, and cases cited.

If the district court, at its next sitting, vacates the injunction granted in vacation by any other judge, it is the

same as if the original application had been made to the district court, and refused ; from such a refusal to grant an injunction, there is no appeal. To allow an appeal in such cases, would work great hardship and injustice to parties. Because, if an appeal be allowed, then the mere application for an injunction, is equivalent to an injunction, for if the court refuse the injunction, the applicant appeals, and stays proceedings. But if it be said that the vacating by the district court in term time, of an injunction granted in vacation, is not the same as a refusal of the original appli, cation, then the county judge has more power than the district court; for if the county judge grants the injunction, the district court cannot dissolve it, without allowing the applicant an appeal and stay of proceedings ; but if the original application be refused by the district court, he has no appeal, and is without remedy. *Hoyt v. Glotson*, 13 Johnson, 139.

2. The appeal does not suspend everything. The trustees, by the appeal, are only prosecuting a *legal right*, which they claim, *for damages*. The jury said they were entitled to no damages. They take an appeal from this, and say they are so entitled. This is purely a question to be settled in a court of law. Their right to damages is a questionable one, and the city offers to secure to them the payment of any damages, that may eventually be awarded them. What more than this can the city do? Why do they apply to a court of equity? Have they not a full remedy *at law*? And do they not by their appeal abandon all idea of relief in equity, and rely upon their remedy at *law*?

As to the authorities cited, they will all be found, (with but few exceptions), arranged in 2 Kent's Commentaries, note *c*, 339. There are conflicting decisions, as to the time when the damages shall be assessed and paid, but some are under the Louisiana Code, which provides expressly for "previous indemnity;" and some are under state constitutions, which provide "that private property

shall not be taken for public use, without full compensation being made;" but our constitution simply says in that regard, " without just compensation ;" hence, it is not to be implied to be a condition precedent.

It is not necessary to have the assessment of damages and the money paid, before the city can proceed to use the ground for a street. See 6 Wendell, 634 ; 14 Ib., 51; 18 Ib., 59 ; 25 Ib.; 462. And in the note to Kent, it is said, that " the doctrine in the cases in 14 and 18 Wendell, appear to settle the principle of constitutional law upon a reasonable and practicable foundation." As to the case in 2 Iowa, 298, in which it is said, " that the language of the constitution means, that the person from whom property is taken for public use, shall have a fair equivalent in money ;" it only means, as the court expressly says, " that he shall be made whole, so far as money is a measure of compensation," but does not allude to the time when it shall be paid. The construction which we claim, has been given to the English statutes, and Lord DENMAN observed, " that frequently the amount of compensation cannot be ascertained, until the work is done." 7 Adol. & Ellis, 124.

The city has done all in her power to ascertain and pay all damages, if any there be, and that is the only question and matter in controversy. We claim, *First*. That the complainants have no right whatever to an injunction, and the same ought to be wholly dissolved ; and, *secondly*. As to the forty feet street, of the existence of which there can be no doubt, we think, the complainants have long enough sheltered themselves behind this injunction, to deprive the public of the use thereof.

WOODWARD, J.*—This is an appeal from the decision of the district court, upon dissolving an injunction allowed by a judge in vacation.

---

*WRIGHT, C. J., dissenting upon one point.

The first question arises on a motion by the defendant to dismiss the appeal, for the cause that no appeal is by law allowed, in such a case. Whether an appeal lies from an order of the district court dissolving an injunction previously granted, is the question here presented. It is possible that cases may be found, holding in general terms, that no appeal can be had from an order allowing, refusing, or dissolving an injunction; but others hold, and it is probably the generally accepted doctrine, that it exists in cases where the dissolution of the injunction, affects the merits of the cause, or where the order involves an adjudication upon any of the material questions in the principal controversy.

The defendant refers to *Van Dewater* v. *Kelsey*, 3 How. Pr. R., 338, and the cases there cited. In this case, a temporary injunction had been granted, to restrain the defendant from selling the property in controversy, pending the litigation; and BRONSON, J., says, the granting, continuing, or dissolving temporary injunctions, rests in the discretion of the court of original jurisdiction; "and we think an appeal will not lie from the order dissolving this injunction." From the preceding case of *Selden* v. *Vermilyea*, Ib., 338, which was of a similar nature, we should infer that the Code, under which they were decided, made a change in the law of appeals, but it does not show what the change was.

The case referred to above, against Kelsey, 3 How. Pr. R., 338, is the same with 1 Const., 533, and the cases there referred to are 16 Wend., 369; 1 Const., 43; 4 Johns., 510; 4 Wend., 173; 1 Paige, 49; 3 Johns., 566; 2 Story's Eq., secs. 863, 959, (*a*); 3 Dan. Ch. Pr., ch. 35, section 3. And these cases recognize the distinction first above stated, and hold that no appeal lies when the order relates to practice only, or is a matter in the discretion of the court, and does not go to the merits.

In New York, since the case of *Rowley* v. *Benthuysen*, 16 Wend., 369, that case has been regarded as establishing the true rule, and has been followed, being referred to gen-

erally in the subsequent cases, as giving the test rule. Courts or persons may differ in the application of that rule, but it is looked upon as the guide. See remarks upon that case in *Fort* v. *Bard*, 1 Const., 43. In the case in 16 Wend., 369, BRONSON, J., says, in relation to the order of the chancellor, which they were asked to review : "It was not made upon the right of the parties as disclosed in the pleadings, but in a collateral matter, relating to the course of proceeding in the cause. In short, it was an order concerning the practice of the court, and upon a question addressed to the mere discretion of the court. The line of separation is not always strongly marked, between questions which are of a purely discretionary character, and those which depend upon some established principle of equity jurisprudence, and the practice and principles of the court are so intimately connected, that it may sometimes be difficult to determine, whether a particular order should be regarded as disposing of the right of the party, or merely regulating the course of proceeding in the cause. But in this case there can be no such difficulty."

Without further comment on the cases, we refer to that, as the one settling the above rule, and as one which examines the cases on the subject of reviewing the decisions of subordinate courts, on questions of practice—questions resting in discretion—granting or denying interlocutory costs—and granting, refusing, continuing, or dissolving injunctions.

In however general terms the cases in New York, and probably elsewhere, may announce their decision, it will be found, on an examination of several of them, that they have reference to this distinction, although it may not be expressly mentioned.

A further consideration worthy of mention, is that our statute, (sections 1555, 1556),. relating to appeals, seems to bring us to the very distinction which is made in the above cases. Not only final judgments, but intermediate orders, involving the merits, and materially affecting the decision, may be reversed on appeal. Admitting, for the argument,

that the appeal does not exist in all cases, we think it must lie where the decision involves any portion of the merits of the case.

This leads to the necessity of looking into the facts of the cause before us, to see whether this order does involve the merits.   The City of Davenport, by its council, passed an ordinance, extending Main street lengthwise, and northwardly, through the grounds of the petitioners.    In accordance with the charter of the city, (statute of 1850–1851, chap. 55, art. 7, sec. 1, &c.), the mayor caused a jury of six men to be summoned, to meet on the 8th of October, 1855, to appraise the damage accruing to the owners of real estate through which the street so extended would run.   The jury examined the proposed route of the street; and the record of proceedings then says : that after remaining together till nine o'clock at night, the mayor discharged them, but it states the reason no farther than this.   The petitioners filed an exception, that the mayor had no right to discharge the jury before they had agreed on their return.   Another jury was summoned for the 9th of October, to perform the same duty.   This jury awarded to the petitioners the sum of nine hundred dollars damages, and the plaintiffs filed further objections to the proceedings.

Prior to this stage of the matter, there appears nothing concerning a street, or road, of forty feet in width, running through the grounds of the college.   A part of the case in which this is brought up, will here be anticipated, in order to render the case intelligible.   The defendant hereafter alleges, that in 18—, one Le Claire, then the owner of the said lands, and of others adjacent, laid the same out into out-lots, and that by virtue of the plat thereof, and the law in force at the time, the street became dedicated as a highway, and became vested in the town, to and for the uses of a public street or highway.

In the exceptions now made by the petitioners, they object that there never was a street through the land, by any order or dedication; and that if such road did ever exist,

then by virtue of an act of the legislature, at the session of 1843–4, and by the action of the county court in 1844 and 1845, the plat by which said street was dedicated, was vacated, and with this the street was vacated; that the vacation of the plat was the vacation of the street. And the trustees protest against the laying off of any street, through the said grounds, for other reasons, and aver that if it should be done, they claim damages to the amount of five thousand dollars; but aver that no pecuniary recompense would be an adequate compensation for the injury it would effect, "whereupon," says the transcript, "the mayor set aside the verdict of the said jury, for and in behalf of the city of Davenport."

Another jury was then summoned for the 23d of October. Each of these juries was sworn to inquire into, and appraise the benefits and damages resulting, &c., and this third one, was further sworn and charged, "to inquire whether any street was in existence through the said lands, and if so, to give damages for the residue of the lands so sought to be condemned." The jury, in their return, allowed no damage to the petitioners, but the transcript shows no finding as to the existence of the street.

The plaintiffs filed their former exceptions again, together with additional ones. The proceeding being laid before the city council, it was ordered that Main street be opened, as before directed by ordinance. The trustees then claimed an appeal, and filed a bond, and the appeal was allowed, and was perfected on the 10th of November, 1855.

Afterwards, on the 27th of May, 1856, the trustees presented to a judge of the supreme court, their petition, setting forth the foregoing proceedings, and their appeal, and representing that notwithstanding the said appeal, and during the pendency thereof, the city was proceeding to appropriate that portion of the land required for the street so extended, and to open and work the same; and praying that they might be restrained therein by writ of injunction, until the said appeal should be tried and determined. A writ of injunction was ordered, in accordance with the

prayer of the petition, and on the 15th of August, a writ was issued accordingly, and served.

At the June term of the district court, 1857, the defendant moved for a dissolution of the above injunction. And afterward, they filed their answer, insisting that the first jury was correctly discharged by the mayor; that the verdict of the second jury was set aside, partly at the instance of the trustees; that prior to, and at the time of the purchase of the land by the plaintiffs, and continuously down to the present time, there was, and is, a public highway, forty feet in width, running through the said college grounds, which was laid out by one A. LeClaire in 18—, who was then the owner in fee of those, and of other adjacent lands; that by the law in force at the laying out, and dedication of the highway, it became vested in the town of Davenport, in trust for the uses and purposes of a highway, or street, and the same had never been vacated; and that the track of the said forty feet street, is included in the track of Main street, as proposed to be extended.

The defendant moved that the injunction be dissolved, and proffered, in case that the chancellor deemed it necessary and right to be done, to execute to the plaintiff such a bond as the chancellor may deem proper and approve, for the payment of any damages which might be awarded the plaintiffs. To this answer, the plaintiffs made a specific replication.

At the same June term, 1857, the district court gave judgment on the motion to dissolve the injunction. The court first examines the question of the discharge of the first jury, and the setting aside the verdict, or return, of the second, both which it held to be regular, and then proceeded to the examination of the fourth objection of plaintiffs, to the dissolution of the injunction. This was, that the verdict of the third jury is a nullity, because they were improperly impannelled, and because they proceeded upon the assumption that there was already a forty feet street through the grounds. Upon this, the decision of the court

is as follows: "The court is of the opinion, that the jury was properly impannelled, and that there was, and is, a street forty feet wide, through the grounds, which has never been vacated. The act of the legislature, approved February, 1844, (page 59), authorizing boards of county commissioners to vacate county plats, expressly saves the vested rights of third persons. Before the vacation of the four acre lots, by Mr. LeClaire, he had sold lots on each side of Main street, from the original northern limits of the town of Davenport, up to the south line of the present college grounds, and the owners of these lots, so sold, refused to agree or consent to the vacation of Main street. Without, therefore, going into an examination of the other questions raised in this case, the court is of opinion, that the injunction heretofore awarded in this case, should be modified or dissolved in part, so far as said forty feet street is concerned;" and it was accordingly so ordered.

The questions now before us are : *First.* That, as suggested above, whether an appeal lies; and *second,* if it does, whether the court erred in so dissolving the injunction in part. Upon the first of these questions, we have before shown the law to be, that an appeal exists, if the dissolution of the injunction involves the merits of the principal case, or any of the questions embraced in it. Therefore, the first point for determination is, whether this is so in the present case. And it appears to us to be quite manifest that it is so.

It is immaterial whether the appeal from the council; brings up to the district court, the whole matter of ordering the street to be extended and opened, or only the question of damages, as is contended by the city. Article eighth, and section ten of the charter, (stat. 1850–1, 125), allows room to contend that the whole matter is taken up in the appeal, but this need not be determined now, for if the question of damages only is thus carried up, it is clear that the prior existence, or non-existence, of the forty feet street, is of vital importance on that question. In truth,

it is the gist and burden of the whole matter.  The really main point evidently is, whether the college grounds, devoted to the purposes of an institution of learning, and to the buildings appropriate therefor, shall be cut open—divided—and it may be by a cut of ten or fifteen feet in depth; and the weight of the question of damages, must rest upon the point of the prior existence of such a street, or road, as is claimed.

The court finds the fact in regard to this, and bases the order of dissolution upon that fact; and indeed the modification is to that precise extent, and no more.  Nothing can be clearer, therefore, than that the merits of the case, and a fact of great importance in it, are involved in the order of dissolution.  Therefore, the appeal lies in this case.

The remaining question is, whether the court erred in making that order.  The injunction issued properly, because the complainants were entitled to have the damages ascertained and paid, before the land could be taken.  Such we believe to be the true meaning of the late constitution, under which these transactions took place.  And the fact that the last jury of the town, had found no damages, forms no answer to this, where an appeal was taken from their finding.  The same reason which existed for the allowance of the injunction, called for its continuance, until the question of damages should be finally settled.  The question of the prior existence of a street, was a question of fact, and it entered essentially into that of the damages, forming, in truth, the substance of it.  We think, therefore, that the court erred in dissolving the injunction in any part, on the motion.

WRIGHT, C. J., *dissenting.*—I only wish to say, that I entertain doubts upon one point decided in this case.  After the jury had determined that the complainants were entitled to no damages, I am inclined to think that the city had the right to open the street, notwithstanding the appeal.  There was nothing for the city to pay, and it would

seem that, under such circumstances, the right to open the street, pending the appeal, should not be, and was not, suspended. This point I should follow further, but for the fact that I understand that the whole case has been settled, and the question rendered, therefore, practically unimportant. I, however, do not wish to be conclusively bound by the ruling, should the point again arise.