ALBANY,
April 6, 1829.

Beach
v.
Fulton Bank.

---

E. S. BEACH and others, appellants, and THE PRESIDENT, &c. of the FULTON BANK, respondents.

An appeal will lie from an order of the court of chancery refusing to open the proofs in a cause for the purpose of *re-examining* a witness, who, since his examination, has disclosed facts material and pertinent to the issue depending in chancery, which he did not disclose when on examination ; such order of the court of chancery affecting the merits of the cause.

It lies when the order appealed from materially affects the merits of the

ALBANY,
April 6, 1829.

Beach
v.
Fulton Bank.

cause. Per SUTHERLAND, J. Or is of such a character that the party may be aggrieved by it. Per WALWORTH, Chancellor.

Although the order appealed from be made by the court of chancery in the exercise of its discretionary powers, or touching the mode of its proceedings, an appeal will be entertained, if not of an *equivocal* character. It does not however follow, that no appeal will be dismissed which does in fact, or may by possibility affect the merits of the cause. Per MARCY, J.

A party may claim of the court of chancery to conform its proceedings to the peculiar circumstances of a case, when the rules of proceeding adopted for ordinary cases come in conflict with his right to have the full benefit of a defence. Per MARCY, J.

April 6th.

MOTION to dismiss appeal. On the third day of March last the chancellor denied an application made by the appellants to open the proofs taken in a cause in which the respondents were complainants and the appellants were defendants, for the purpose of *re-examining* a witness produced on the part of the respondents. The motion was denied with costs. It appeared that since the examination of the witness in chancery, he had been called to testify in a cause tried in the superior court of the city of New-York, and on that occasion disclosed facts which the appellants alleged were material and pertinent to their defence in the cause depending in chancery, and which the witness had not disclosed on his examination in chancery. From this order the defendants below appealed to this court, and a motion was now made on the part of the respondents to dismiss the appeal.

*J. Hoyt*, for the respondents. The rule as to the cases in which this court will entertain appeals from interlocutory orders is not very distinctly settled. The statute (1 *R. L.* 134,) allowing appeals, is broad enough in its terms to include every order made in the court of chancery. An order to appear and to answer, and indeed every order made in the ordinary progress of a suit would, according to a literal construction of the act, be the subject of an appeal. This cannot be presumed to have been the intention of the legislature, for if so, suits in chancery would be interminable. Some limitation therefore must be imposed, and none more proper than that a party shall not be permitted to appeal from an order made in the ordinary course and practice of

the court. Such is the order in this case. Applications to the court of chancery for the extension of the rule to produce witnesses, and for the examination and re-examination of witnesses, are of every day's occurrence, and are granted or denied according to the circumstances of each particular case, by the chancellor, in the exercise of a sound discretion, regulated by the settled practice of the court. The application, besides, was to the grace and favor of the court.

ALBANY,
April 6, 1829.

Beach
v.
Fulton Bank.

Chancellor Kent, in his opinion pronounced in *Clason* v. *Shotwell*, (12 *Johns. R.* 31,) shews conclusively that *error* will not lie on a matter resting in discretion ; and the reasons he urges in support of the rule apply with equal force against *appeals* from orders made in the exercise of discretion by the court of chancery. An appeal from an order in chancery appointing a guardian, on the ground that the selection was not well made, was dismissed by the house of lords, because the chancellor had a discretionary power in the selection. (2 *Bro. P. C.* 179.) An appeal will not lie upon an interlocutory order dissolving an injunction. (6 *Cranch,* 51.) It only lies where the decree or order complained of involves a decision upon some matter touching the *merits* of the controversy. (9 *Johns. R.* 448.) If it be said that the appeal ought to lie because costs are awarded against the appellant conformably to the opinion pronounced in 4 *Johns. R.* 528, the respondents will stipulate to release their costs.

*S. A. Foot,* for the appellants. To determine whether the order appealed from bears upon the merits of the controversy, it is necessary to look into the merits. [SUTHERLAND, J. This cannot be necessary ; for the purpose of resisting this motion, you may assume that the order bears upon the merits. This court cannot, in this stage of the proceedings, look into the whole case, to determine on the correctness of the order. The sole enquiry is, whether the order is of such a character as that an appeal should be sustained upon it.] It is of such a character ; it involved the whole merits of the controversy. It was for the re-examination of our adversary's witness, who, subsequent to his examination in chancery, had disclosed facts in a trial at law which could not be obtained from him on his examination in the

court of chancery. Can it be that an order excluding testi-mony which the party never before had an opportunity to offer, is not the subject of appeal?

Admitting that the order was made in the exercise of the discretionary power of the court, it is, notwithstanding, the subject of appeal. What discretion is that, the exercise of which determines the rights of parties beyond the power of review? The discretion possessed by the chancellor is a le-gal discretion, not to be exercised contrary to law. A dis-cretion, independent of legal rules, concluding the rights of parties, who are vigilant, and yet precluded from being heard, is a legal monster, to be viewed with fear and horror. It cannot be that a discretion exists in the chancellor, which may be exercised to the destruction of the rights of parties, and yet be beyond the power of review.

Whether a default for not answering shall be opened, is an application to the discretion of the court, and when refu-sed, this court have sustained an appeal. Appeals also are sustained on orders allowing, continuing, refusing and dissol-ving injunctions.

Whatever may be the rule in England, the language of our statute, giving the right of appeal, is so broad that there can be no doubt that the appeal in this case ought to be sus-tained. Not only is an appeal given from every sentence, judgment, decree or order of the court of chancery, but to shew the intent of the legislature, orders other than final de-crees are expressly provided for. There are undeniably cases where an appeal would not be sustained; but it is in-sisted that in every case of an order made, touching the mer-its of the controversy, an appeal lies.

*A. Van Vechten,* on same side. The chancellor consider-ed the application as made to the grace and favor of the court. It was not so; it was the assertion of a right. The appel-lants asked permission to avail themselves of matter of de-fence which never before was within their reach. They ap-plied at the earliest day, and were not chargeable with hav-ing slept on their rights.

It is conceded that unless the order affects the merits of the suit depending in chancery it is not the subject of appeal. This is such an order; for it will scarcely be denied that the merits of a case may be affected by the admission or exclusion of testimony; and though, as a general rule, the discretion must be reposed in the chancellor to regulate the examination and re-examination of witnesses in causes depending before him, rules framed for the convenient transaction of business should not be so unbending as to destroy the rights of parties.

In the organization of the court of chancery, the whole power of the court being lodged in a single judge, the legislature have provided against injuries to suitors from erroneous decisions by a broader rule of review than is given in cases of judgments by the supreme court. In the latter, *final* decisions alone can be appealed from; in the former, not only *final* decrees, but *interlocutory* orders are the subject of appeal. (1 *R. L.* 134. 3 *Bl. Com.* 55. 9 *Johns. R.* 449. 1 *Wooddeson,* 232, 240.) And yet it is not contended that the rule applies to every order made, but only where the party *is* or *may* be aggrieved, or where the order involves a decision of the merits, or may affect the merits.

It is said the order was made in the exercise of discretionary power, and therefore an appeal does not lie. If by discretion is meant arbitrary power, it is denied to belong to the court; it would involve the essence of tyrrany. The discretion which appertains to a court of chancery is a sound legal discretion, regulated by the principles of pure and enlightened equity; and there is nothing incongruous in this court, sitting as a court of appeal, reviewing an order made in the exercise of such discretion. Why should the exercise of discretion not be reviewed as well as the making of a final decree? The chancellor has no other guide in the making of those orders than an enlightened conscience, regulated by the settled principles of equity law. A discretion exercised contrary to the principles of equity will not be recognized.

This court have sustained appeals from orders refusing an injunction, (3 *Cowen,* 714,) and denying the dissolution of an injunction. (4 *Johns. R.* 510, 528.) Appeals have been dismissed, but never where the order appealed from touched the merits of the case. Would this court hesitate to entertain an appeal where a bill had been taken *pro confesso* against a party, and the chancellor refused to let him in to a defence ? Would the court not review the decision ? And may not the appellants, by the exclusion of the testimony in this case, be as effectually injured, as if they had not been permitted to make a defence ? The chancellor in both cases has a discretion, and this court has the power to review the exercise of that discretion. The case of *Clason* v. *Shotwell* shews the astuteness of this court in the assertion of its appellate power.

MARCY, one of the Justices of the Supreme Court. The questions presented by the motion under consideration are two : 1. Is there a description of interlocutory orders of the court of chancery clearly defined by the decisions of this court, from which no appeal lies, embracing the order appealed from in this case ? and 2. If there be no such class of orders, can an appeal be sustained on the order in question, considering its character and object ?

By the eighth section of the statute relative to this court, (1 *R. L.* 134,) the right of appeal is expressly given to all persons aggrieved by any sentence, judgment, decree or order of the court of chancery. In another section of the same act it appears conclusively that this right is not to be confined in its exercise to *final* decrees, but extends to *interlocutory* orders. The language of the statute seems to give an unrestricted right of appeal from *all* orders ; yet I believe that every member of this court, who has had occasion to speak with direct reference to this subject, has declared that there is a class of orders of the court of chancery which this court will not review on appeal. Efforts have been frequently made to establish the line of distinction between the two classes of orders. All have acknowledged the great difficulty of fixing definitely this line to any good purpose, and most

who have labored to do it, appear to me to have retired from the task, with a conviction that it was impracticable.

As far as my examination has extended, it appears that this question was, for the first time, distinctly presented to this court in 1800. In the case of *Newkirk* v. *Willet*, (2 *Johns. Cas.* 415,) the question was raised whether an appeal would lie from an order dissolving an injunction. It came up on the hearing of the appeal, and the court waived it, and disposed of the appeal on its merits. Chancellor Kent, then a justice of the supreme court, observed, in relation to this question, that there was a line of distinction between that class of orders arising in the progress of a cause in the court of chancery, which may be reviewed on appeal, and the class of orders from which an appeal will not lie. He perceived the difficulty of drawing the line, and alleged the want of time to make a proper examination into the subject, as an excuse for not then attempting it.

*Taylor* v. *Delancey*, (2 *Caines' Cas. in Err.* 142,) was the next case in which the question arose as to the class of orders on which this court would refuse to sustain appeals. The judge of probates had selected one of several persons, next of kin in equal degree to the intestate, for administrator, and there was an appeal to this court from the order making the selection. This court decided that it was purely in the sound discretion of the judge of probates to take any one for administrator, to the exclusion of others in equal degree. On the point whether the court could relieve on appeal, if the discretion appeared to have been abused, Spencer, J. observed, that he was not disposed to say that there might not be cases where the exercise of a discretion in an unjust and illegal manner would not be examinable and relievable. Waiving the expression of an opinion upon the abstract question of the abuse of discretionary power, he decided that the case before the court did not present such a question for their consideration.

In 1808, the right of appeal from certain interlocutory orders of the court of chancery came under discussion here, in the case of the *Trustees of Huntington* v. *Nicoll*, (3 *Johns. R.* 566.) The chancellor had granted two orders in that

case, from which there had been appeals. One was for an injunction staying the parties in a suit at law, from proceeding to trial at a particular circuit. Van Ness, J. in his opinion, admits that the statute seems to give an appeal from *any order*, but he thinks it cannot be denied that there are orders from which there can be no appeal. "If it were practicable," he says, "it would be very desirable, by a decision of this court on some proper occasion, to establish a rule on this subject whereby the profession might hereafter be governed." It will appear quite evident, from an examination of that case, that nothing was done in it towards enabling us to lay down the rule which was thought to be so desirable. It was conceded, that the power to grant injunctions is confided to the discretion of the court, and its exercise in that particular case did not affect the merits of the cause ; and yet this court chose to put their decision upon the ground that the injunction was temporary, and the object of it had been attained long before the appeal came on to be heard. Mr. Justice Van Ness comes to the conclusion, that in all cases where an appeal is brought on an order of that description, this court should be satisfied that the order had been made clearly and palpably contrary to the equity of the case, and the rules and practice of the court.

Spencer, J. was against dismissing the appeal, and he disposed of the question as to the order being one from which an appeal would not lie, by the general declaration that the right was given by statute, and when the appeal was interposed, the order from which it was brought was an existing one.

Kent, Ch. J. said in relation to the order for the injunction, that the appeal from such an order was without precedent, and, as appeared to him, without sense or meaning. To reverse an order long since expired, he said was absurd. The other order was for the examination of the complainant's guardians, as witnesses. All the members of the court who gave opinions, were in favor of dismissing the appeal as to that order, because the objection on that point should be to the testimony when taken, and an order made thereon would be the proper subject of an appeal, if the party was aggrieved.

In the case of *McVickar* v. *Wolcott*, (4 *Johns. R.* 510,) this court decided that an appeal lies from an order of the court of chancery, *refusing* to dissolve an injunction, and awarding costs against the defendants. The same question as to the distinction between orders from which appeals would or would not lie, that had arisen in the preceding cases, and which the court had declined to decide any further than became strictly necessary for the disposition of the cause before them, met them again in this case, and found them as unprepared, and as much embarrassed with the difficulties attending it, as they had been on any former occasion. The learned judge who delivered the opinion of the court, expressly declined drawing the line of distinction. He merely decides that the refusal to dissolve an injunction directing it to be retained, and awarding costs to be paid by the party making the application, is an order within the terms of the statute.

The case of *Buel* and *Street*, (9 *Johns. R.* 443,) decides that an appeal does not lie from an order of the court of chancery, for an attachment to bring up a party for disobeying an injunction. The question now under consideration was much discussed on the argument of that case, and considered in the opinions delivered by the judges. After alluding to the former decisions of this court, Yates, J. declares that it appeared to him impracticable to establish a definite rule on the subject. The chief justice thought the statute did not apply to a decree or order that did not involve a decision upon some matter touching the merits of the controversy. Spencer, J. declared that an appeal would lie where the order affected the rights of the parties, or imposed a grievance, but not on a mere *practical* order.

The case of *Clason* v. *Shotwell*, (12 *Johns. R.* 31,) came here on a writ of error from the supreme court, and the learned and able opinion given by the chancellor in that case, refers to the law as applicable to writs of error ; and he notes the distinction between these writs and appeals on orders of the court of chancery. He lays down and establishes, by authority and argument, the general rule, that error will not lie on a matter resting in discretion.

ALBANY,
April 6, 1829.

Beach
v.
Fulton Bank.

In the case of *Travis* and *Waters*, (12 *Johns. R.* 510,) where this question came again under consideration, Platt, J. observed, that he was not prepared to say that an appeal would not lie in any case for *costs only*, and Spencer, J. intimates an opinion that an appeal would lie in such a case, under our statute.

I believe I have alluded to most, if not all of the cases wherein this court have had occasion to consider the distinction between orders, with regard to the question whether appeals may or may not be brought on them, and I have attempted to draw from them a general rule to mark the two classes; but I must confess that I have closed the examination of them, with the same conviction which others have expressed, that it is exceedingly difficult, if not impracticable, to arrive at any satisfactory result. Each case, it seems to me, has been decided, in a great degree, with reference to its own characteristics, and without regard to the application of any principle classifying these orders. If this court shall now attempt to extract from the various positions laid down in these cases, a general rule for the government of their proceedings, it is a matter of duty that they should not forget that they are fixing limits to a highly prized and valuable right, and that an unnecessary restriction upon its exercise may, and most probably would, interfere in an essential manner with the administration of justice.

On the argument, the rule laid down by the chancellor in the case of *Clason* v. *Shotwell*, relative to writs of error, was much urged upon our consideration. There is an evident distinction between writs of error and appeals. If it had not been long established by unquestionable authority, the court would at once see the necessity of recognizing it. The discretionary powers confided to courts of common law, are few and unimportant, compared with the immense mass of them which surrounds, and, perhaps I might say, constitutes the very being of a court of equity. The power of issuing injunctions and attachments is, so to speak, the right arm of the court of chancery, and the exercise of it, in almost every instance, is conceded to be a matter resting in discretion. To put every act of this power, be its consequences to par-

ties ever so serious, wholly beyond a review by the court of the last resort, would, in many instances, be a denial of justice, and the surrender of a long used and necessary portion of the jurisdiction of this court.

In the case of *Taylor* and *Delancey*, presenting, as nearly as any one could, the abstract question of the exercise of discretionary power, it was strongly intimated that this court would interfere and relieve, where the discretion had been exercised in an unjust manner. In the case of a temporary injunction to stay the party from proceeding to trial at law, one of the ablest judges that ever had a seat in this court, was in favor of sustaining the appeal from the order granting it. The question whether an appeal would or would not lie on an order dissolving or refusing to dissolve an injunction, a matter certainly resting as much in discretion as any that can come before the chancellor, has been twice distinctly raised here. In the one case, (2 *Caines' C. in error*, 296,) the court declined the question, and in the other, (4 *Johns. R.* 510,) it decided that an appeal would lie on an order refusing to dissolve an injunction, and allowing costs for resisting the application.

It is a familiar principle, that questions of costs are confided to the discretion of the chancellor, yet it has been decisively intimated, that an appeal would be sustained here on an order relating solely to costs. Enough has been shown, it appears to me, without going more at large into this matter, to satisfy us, that if we should adopt the broad rule that no appeal can be entertained here from an order made by the court of chancery, in the exercise of its discretionary powers, we should come in conflict with several of the former decisions of this court, and depart from the settled construction of the statute securing the right of appeal.

But if we have the right to review the decisions of the chancellor depending on discretion, must we be necessarily carried as far as was proposed on the argument? Can we dismiss no appeal from any order whatever, which does in fact, or may by possibility affect the merits of the cause in which it was made? A rule as broad and undefined as this, would not, I apprehend, be worth formally setting up and recog-

ALBANY,
April 6, 1829.

Beach
v.
Fulton Bank.

nizing as a guide in our proceedings. Indeed, it would scarcely deserve the name of a rule, for it would regulate nothing. With it we could never venture to dismiss an appeal, without examining the merits of the order from which it was made, and ascertaining its connection with the merits of the cause in the court below; and without any rule on the subject, we have no occasion to do more.

When my attention was first turned to this question, I did suppose that a safe middle course might be found between a line of distinction which excludes too much, like that laid down by the counsel for the respondents, and one like that offered by the counsel for the appellants, which, as a rule calculated to produce any practical good, does not exclude enough; but I have not been able to trace it to my satisfaction.

I am convinced that the benefits of a rule on this subject are overrated, and the difficulties of establishing it have not been generally appreciated. This court has not yet been greatly oppressed with appeals on questionable orders. The reports of its proceedings for more than thirty years, furnish but few cases; nor does it appear that the house of lords in England, which is situated in relation to the equity courts of that country as this court is to our court of chancery, has felt the necessity of such a rule, to relieve itself from the burthen of appeals from interlocutory orders.

Being unable to dispose of the motion before us by applying to it any general rule, it becomes necessary to consider the general character of the order on which the appeal is brought, and the object of the application denied by the court below, so far at least, as to determine whether this court ought to sustain the appeal. We ought not to send the appellants out of court unheard on the merits of their appeal, without being fully satisfied that they could have no relief here, in case they should show their situation to be such as they represent it.

We are then, for the purpose of deciding this motion, to assume that the witness, in order to whose re-examination the defendants applied to the chancellor to have the proofs opened, had been cross-examined in a proper manner to

draw out the facts which they now wish to prove by him; that since publication passed in the cause below, he has disclosed under oath, in a suit at law, facts which he did not disclose on his examination in chancery, material and pertinent to the defence of the appellants ; and that a seasonable application was made for his further examination. This is the case that the appellants declare they shall present to us on the appeal, and until we investigate its merits we cannot say that it is not what they represent it to be. I cannot doubt that an order refusing such an application would be a decision affecting the merits of the cause in which it should be made, and a matter of serious grievance to the party against whom it might be entered. If such a case exists, why shall not the aggrieved party find relief in this court? Not merely because the granting or refusing of the application to the court below was confided to its discretion ; because we have seen that this court, in repeated instances, has refused to restrict itself by this consideration, and in several cases has sustained appeals on orders emanating from the discretionary powers of the courts in which they were made. Was the application below to the favour of the court? This is denied by the appellants, and on the assumption which this motion requires us to make, may well be denied. I regard it as a matter of right, that a party should have the full benefit of any defence he may have in a court of equity which he has not waived by his acts or forfeited by his negligence; and if, from the peculiar circumstances of the case, the rules of proceeding adopted for ordinary cases stand in the way of making such defence, the party, I think, may claim of the court *ex rigore juris*, that it should conform its proceedings to the peculiar circumstances of the case.

I do not, I am confident, undervalue the importance of having established modes of proceeding in all courts of law and equity, and of enforcing an observance of them ; but to withhold right by an undue regard to the forms by which it is obtained in common cases, is making the end subservient to the means, and would seem to be, in a court of equity, a renunciation of one of the acknowledged objects of its original institution ; that of qualifying and tempering the rigor

ALBANY,
April 6, 1829.

Beach
v.
Fulton Bank.

and sharpness of the common law in special cases, and of supplying that which is defective, and controlling that which is unintentionally harsh in the application of a general rule to a particular case.  (1 *Fonb. Eq.* 6.)

Although I regard it as the duty of this court to entertain an appeal from an order in the court of chancery on a matter confided to its discretion, and touching the mode of its proceedings in the progress of a cause, I do not hesitate to say, that the case to which we will apply our correcting power must be of no equivocal character ; it must appeal strongly to our sense of justice.   The case which the appellants have put to us would, in my judgment, warrant our interference and require our correction.   I am, therefore, for denying this motion and hearing the appeal on its merits.

SUTHERLAND, J. concurred in the result of the opinion pronounced by Mr. Justice MARCY.   He also had found the difficulty of proposing a general rule by which this court should be bound in determining the cases in which they would entertain appeals from interlocutory orders, considering the extremely broad and comprehensive language of the statute.   The orders of the court of chancery are so numerous and various that it is in vain to attempt the laying down of a general rule ; but if practicable, he doubted the propriety of adopting such rule, when he took into view the phraseology of the statute giving the right of appeal.   The question should be, whenever a motion is made to dismiss an appeal, is the order such as materially affects the merits of the cause ? If it is, the appeal should be sustained, and the motion should be determined not by an enquiry into the merits of the cause, but on the abstract question, will the order appealed from probably affect the merits ?   In the present case, he said he could well conceive that the order appealed from might affect the merits, and he therefore was against granting the motion.

The CHANCELLOR expressed his regret, that during the avocations of a stated term of the court of chancery, he had not been able to bestow that attention upon this question

which its importance demanded.   He had, however, arrived
at the same result with the justices of the supreme court.
The case of appeals, he said, could not be likened to writs of
error, which brought in review only the *final* decision of the
court below.   The organization of the courts were different.
Formerly, the governors were chancellors, and great jeal-
ousy existed towards them in the exercise of their chancery
powers; to which might be traced the provision giving a
right of appeal from interlocutory orders as well as final de-
crees.   The true question, on motions to dismiss appeals, he
conceived to be, is the order such as that the party may be
aggrieved by it ?   The judges have attempted to mark a line
of distinction between orders appealable and not appealable.
For his part, he could not conceive of any order of the court
of chancery which did not affect the merits of the case, ei-
ther directly or indirectly.   Initiatory orders possibly might
be an exception; such as an order for the examination of
one of several defendants as a witness, where all exceptions
are reserved until the hearing.   Of this character is the case
in 9 *Johns. R.* 448.   Where a party is aggrieved, or may be
aggrieved, by an order made in chancery, he has the right to
appeal.   To deny the right, where the order is founded up-
on the exercise of the discretionary powers of the court,
would be to abrogate appeals in most cases of interlocutory
orders.   He was of opinion that the appeal should be heard,
and that the motion of the respondents ought to be denied.

Whereupon, the motion was *unanimously* denied.

---

### GENERAL RULE.

THE *nineteenth* rule of this court was amended, so as to
read as follows: " That all costs awarded by this court shall,
in cases of appeal, be taxed in the court of chancery, and in
writs of error in the supreme court, in the usual manner of
taxing costs in such courts, and when thus taxed, shall be
inserted in the judgment of this court sent down to said
courts respectively ; for which costs, the supreme court, in

ALBANY,
April 7, 1829.

General Rule.

cases of writs of error, shall award execution, according to the course of that court; and the payment of all costs awarded by this court in cases upon appeals, shall be enforced by the court of chancery, according to the practice of that court."*

* This amendment was proposed by Mr. Justice SUTHERLAND, as *declaratory* of the law; the supreme court having felt itself obliged, he said, in 1 *Wendell*, 26, to decide that the rule, as it heretofore stood, must have been inadvertently adopted, as it clashed with the provisions of the statute, (2 *R. L.* 4,) relative to the taxation of costs.