PIERRE CHOUTEAU, JR., and others, Appellants, *vs.* HENRY M. RICE and others, Appellees.

An interlocutory decree is one which is made pending the cause, and before a final hearing on the merits.

A final decree is one which disposes of the cause, either sending it out of Court before a hearing is had upon the merits, or, after hearing is had upon the merits, decreeing, either in favor of, or against the prayer in the bill.

A decree, dissolving an injunction, is an interlocutory decree, and not properly the subject of appeal.

Under the Organic Law and the Statutes of Minnesota, appeals will only lie from final decrees.

This was an appeal from a decree of the District Court of Washington County, allowing the plea filed by the appellees, and dissolving the injunction.

The appellees moved to dismiss the appeal:—

1. Because the decrees appealed from are interlocutory, and not final.

2. Because the dissolution of an injunction is a matter resting entirely in the discretion of the Judge making the order, and therefore, not properly the subject of appeal.

A. WILKIN and HOLLINSHEAD, for the Motion.

The fair construction of the statute is, that only such orders and decrees as are a determination of the cause below, are appealable. In other words, that *final*, and not *interlocutory* decrees, are intended to be the subject of review.

To construe the statute in any other way would be to make *any* order or decree, of whatever character, appealable, and thus work infinite mischief, and delay justice. *Marcy, J.* 2 *Wendell*, 230. 3 *Dan., Ch. Pr.* 1606. *Owen vs. Griffith*, 1 *Ves.*, 350.

The dissolution of an injunction rests in the sound discretion of the Court. 3 *Dan. Ch. Pr.*, and note. *Robertson vs. Bingley*, 1 *McCord, Ch.* 351. An order which does not put a final end to the cause, is interlocutory. 3 *Dan. Ch. Pr.* 1606. An appeal will not lie from a decree dissolving an injunction. *McCullum vs. Eager*, 2 *Howard*, 61. *Barnard & Hawley vs. Gibson*, 7 *Howard*, 650. *Forgay vs. Conrad*, 6 *Howard*, 120.

Chouteau *v.* Rice, et. al.

R. R. NELSON and WILKINSON, for Appellants.

The Organic Act, Sec. 9, provides that the jurisdiction of the Supreme Court shall be as limited by law. The Statutes of Minnesota define the powers and jurisdiction of the Supreme Court, and give it a jurisdiction which shall extend to all matters of appeal from the decisions, judgment and decrees of any District Court, in all matters, whether at law or in equity.

The act relating to the Court of Chancery provides, that any party may appeal from any order or decree of the Court of Chancery to the Supreme Court. *Stat. Min. p.* 64. The language of the Statutes is unmistakable. · Not only is an appeal given by the Organic Law, but the Statutes say that *any* order or decree can be appealed from.

In New York, before the Revised Statutes of 1830, the right was given to all persons *aggrieved* by any sentence, judgment, decree, or order of the Court of Chancery. Under this statute, appeals have been taken and sustained from orders granting, dissolving, and refusing to dissolve injunctions. 1 *New York R. L. p.* 134, *Sec.* 8. 1 *Moulton, Ch. Pr. p.* 55. 14 *Johns, R.* 63. 3 *Cowen,* 714. *Mc Vickan vs. Walcott,* 4 *Johns, R.* 510, 528. *Beach vs. Fulton Bank,* 2 *Wend. p.* 229, 230, 235. An appeal lies from an order for costs only. 12 *Johns,* 510, *Spencer J.* An appeal lies from interlocutory orders. 4 *Paige,* 273, 457, 473. 5 *Paige,* 296, 309. 6 *Paige* 273, 379. 3 *Johns, R. p.* 566. Courts of appellate jurisdiction will interfere and relieve, when a discretionary power has been used unjustly. *Taylor & Delancey,* 2 *Caines,* 142. See also 2 *Wend.* 235.

An appeal lies from an interlocutory order, overruling a motion to dissolve an injunction. *Lindsay & Jackson,* 2 *Paige,* 581, *ibid.* 164.

An appeal lies from an order dissolving an injunction. 3 *Paige,* 381. 26 *Wend.* 115. 4 *Equity Dig.* (No. 11, 12, 13,) *p.* 479. 6 *Paige,* 379. 6 *Wend.* 11.

*By the Court*—COOPER, J. This cause came to this Court on appeal from the U. S. District Court of the Second Judicial District.

The appellees interpose a motion to dismiss this appeal for the reasons :—

1. That the decree sought to be corrected is interlocutory and not a final decree, and therefore not the subject of an appeal.

2. That the dissolution of an injunction is a matter resting entirely in the discretion of the Judge making the order, and therefore not appealable.

In order to understand, and have a just and full appreciation of the questions arising out of this motion, it will be necessary to give a succinct history of this cause.

The cause was commenced by filing a bill of complaint, alleging the existence of a partnership between the complainants and defendants, stating that a sum of money was due from the defendants—charging, that the defendants had in their possession a large amount of partnership effects, and that they were wrongfully appropriating them to their own use, and fraudulently refusing to account for them. The bill prayed that a decree might be made dissolving the partnership—another prayer for appointing a receiver—another for granting an injunction to restrain defendants from disposing, either of their individual property, or that of the company—and another ordering that a subpœna issue, together with such other and further relief as might be necessary in the cause. A receiver was appointed. He accepted, and gave bonds. The injunction was granted, the subpœna issued, and service was had upon the parties defendant.

Subsequently, the defendants came into Court, and plead in bar an agreement executed by the parties to this suit, which purports to settle all matters of variance between them.

The plea is *allowed.* This is the first error complained of. Upon the *allowance* of the plea, an order is made dissolving the injunction. This constitutes the second error; and from these two decrees this appeal is taken.

Are these interlocutory, or are they final decrees ? What is an interlocutory, and what a final decree ? An interlocutory order or decree, is one which is made pending the cause, and before a final hearing on the merits. A final decree, is one which disposes of the cause, either sending it out of Court be-

Chouteau v. Rice, et. al.

fore a hearing is had upon the merits, or, after a hearing upon the merits, decreeing either in favor of, or against the prayer in the bill. Either of which puts an end to the cause.

A final order may sometimes be made upon an interlocutory proceeding; but not the converse. There is much difficulty in defining, so clearly as we could wish, the exact line which is to distinguish interlocutory from final decrees; but I think that the rule first laid down is the proper one, and that no order or decree which does not preclude further proceedings in the case in the Court below, should be considered final.

In the case before us, no obstacle has been presented to prevent a further and final hearing; and we therefore think, that these orders are entirely and purely of an interlocutory character, and not the subject of appeal.

There is no doubt of the propriety of a rigid adherence to this rule, where the statute does not alter or extend it.

Does the statute alter or extend it?

We think not. The Legislature of this Territory did nothing more than to prescribe the manner in which appeals should be taken, and evidently intended to carry out, by its provisions, the salutary rule indicated in the 9th Section of the Act organizing the Territorial Government.

That act provides, that "Writs of Error, Bills of Exceptions and Appeals in Chancery causes, shall be allowed in all cases, from the final decisions of said District Courts, to the Supreme Court, under such regulations as may be prescribed by law."

This provision needs no judicial construction. Its intention is manifest, and its language plain. But it is held that the Statutes of Minnesota, regulating appeals from the Courts of Chancery, confer the right of appeal from *any* order or decree of such Court.

Sec. 54 provides that "Any party may appeal from any order or decree, to the Supreme Court."

This is a plain provision, and if unqualified by the succeeding sections of that Act, would undoubtedly give the right of appeal from interlocutory, as well as final decrees. But in the construction of statutes, we must look at the whole act relating to the particular subject under consideration, and not merely to detached sentences, taken from any particular section of

such act.    One of the subsequent sections provides, that upon the taking of an appeal, the appellant shall give such security as one of the judges shall direct, conditioned to abide the final decision or order of the Supreme Court, and to pay the costs of appeal, in case the *final decree* of the Court below is affirmed.    What meaning can be attached to this provision, other than that the appeal must be from a final order or decree ?    If appeals had been allowed from *interlocutory* orders or decrees, would the Legislature have enacted that on such appeal, the party appellant should give security to pay all costs on an appeal from a *final decree ?*    Such a construction would be monstrous.    Would they anticipate an order, and make one party liable for the acts of another?    Never !

But the Act does not stop even here ; it goes further, and provides, "That if the final decree of the Court below be affirmed, the Supreme Court shall have power to award damages, not exceeding fifteen per cent. on the amount awarded by the decree below."    Can this " amount awarded by the decree below " mean any thing but a final decree?    It cannot. Money or property is only awarded by final decrees, unless it is under the provision of statute.

Here we have no such statutes, and if this act means anything by naming these orders or decrees, it means such orders and decrees as are allowed under the general rules regulating the practice in Courts of Chancery.    A decree awarding money or property, in dispute, in the bill of complaint, and under the general pleadings, must be a final decree.

And why ?    For the reason that it goes to the vitality of the issue—it touches the merits of the cause.

From a thorough investigation of this question, we are entirely convinced, that the construction of the statutes given, is the proper and only one, and that appeals will only lie from final decrees.    To adopt a different rule, where there is no statutory prohibition, would be almost equivalent to closing the doors of justice.    This rule has been sanctioned by experience, and is one which commends itself to every rational mind. Manifest wrong—manifest delay—and manifest injustice, would most indubitably be the result of allowing appeals from every decree of a Court of Chancery.    We must establish some rule,

Chouteau v. Rice, et. al.

and if not the one herein announced, where are we to stop? It is extremely dubious, if a contrary rule were adopted, whether there be a man amongst us, who would live to see the end of this, or any other cause, now pending in the Courts of Chancery of this Territory.

Nor can hardship or irreparable injury accrue to any party from the adoption of this rule. The Courts of Chancery are always open, and relief will be granted whenever, and wherever, the proper application is made, and a proper cause shown upon the merit of the application.

The appeal is dismissed with costs.

GOODRICH, Chief Justice, dissenting.

It appears, from the record in this cause, that complainants, P. Chouteau, Jr. and others, in the month of October, 1849, filed their original bill in the District Court, at Stillwater, against Henry M. Rice and others, charging that said Rice and others, had entered into partnership with complainants for the purpose of trading with certain Indian tribes in Minnesota. That complainants furnished a large amount of goods, money, &c. for such trade, a portion of which was still in the possession of Rice. That Chouteau resided in the city of St. Louis, Mo. That Rice assumed the management of the business at St. Paul, and was charged with its conduct in accordance with certain articles of partnership, which are made a part of complainant's bill. That Rice, departing from, and disregarding said articles of partnership, fraudulently diverted the capital so furnished by complainants, from its legitimate object—embarked in wild and visionary speculations in lands, town lots, buildings, &c. &c.—that by this conduct on the part of Rice, complainants had sustained a loss of $30,000.

They pray that Rice and others, with whom they allege he has combined and confederated for the purpose of defrauding them, be made parties defendants to this bill—that Rice be enjoined from the further management of the affairs of the firm—that he and his confederates be restrained from conveying or disposing of such property of the firm as he may have in his possession, or that held in his own right—that an account be taken and the partnership dissolved—upon which an

injunction issued. The bill was subsequently taken *pro con-fesso;* after which, and at the October term, 1850, Rice and others pleaded a settlement and release of all matters in controversy of a date subsequent to the filing of complainants' bill—and, by counsel, moved the Court that the injunction be dissolved and the bill dismissed. The cause was continued for advisement, and on the 1st of July, 1851, the opinion of the Court was filed.

The *pro confesso* was set aside on the 12th of February, 1851. On the 3rd of March, 1851, respondents pleaded said settlement and release more *formally*.

At the May term of said Court, 1851, and *previous* to any further steps having been taken in the cause, complainants exhibited to the Court their supplemental bill against respondents; charging that said settlement and release, set up by respondents in said plea, had been obtained by and through the false and fraudulent conduct and misrepresentations of Rice; and by petition and affidavit, moved the Court that the same be filed and made part of the original bill.

This motion was heard by the Court. *Subsequent to* which, and on the 26th day of May, 1851, the following order was made in the cause :—

" This cause came on to be heard on an *ex parte* application, on the part of the complainants to file a supplemental bill—a plea having been pleaded and a motion filed on the part of defendants, to dissolve the injunction had in said case enjoining said defendants ; and the application having been argued by counsel, it is hereby ordered that the plea pleaded be allowed. And it is further ordered that the injunction in this case be dissolved. And it is further ordered that the supplemental bill be filed of record in this case, and that the prayer of said complainants for a subpœna be granted."

" And it is further ordered that said subpœna be issued accordingly, and made returnable on the 25th of June, 1851."

" And it is further ordered that the said defendants plead or answer to the said supplemental bill, filed as the same may require, or demur thereto, within twenty days after the return of the subpœna ordered and allowed—and that, in default of so doing, the said bill and supplement be taken as confessed."

By which complainants' rights seem to have been placed in jeopardy, and from which order they appealed to this Court.

And respondents move this Court to dismiss said appeal:—

1st. Because the decree appealed from is interlocutory and not final.

2d. Because the dissolution of an injunction rests entirely in the discretion of the Judges, and cannot properly be made the subject of appeal.

And this motion is *sustained* by a majority of this Court, and from which opinion I feel constrained to dissent.

In the disposition of this question we are bound by no *precedent* of our own.

The injunction in this case was the first ever granted in this Territory; therefore, the investigation and disposition of this question must turn upon its own peculiar merits, governed by the established usages of Courts of Chancery.

Congress has clothed the members of this Court with all the equity powers of the English Court of Chancery. The equity jurisdiction of the Courts of the United States, is independent of the local law of any State, and is the same in nature and extent, as the equity jurisdiction of England, from which it is derived. *See* 2 *Sumner, C. C. R.* 401.

The 9th section of the Organic Act, provides, that "the appellate jurisdiction of the Supreme Court, shall be as limited by law." By what law? By such laws as govern the English Court of Chancery, and as may be *rightfully* enacted by the local legislature.

By said Act it is provided that Writs of Error, Bills of Exception and Appeals shall be allowed in all cases from the final decisions of said District Courts to the Supreme Court, under such regulations as may be prescribed by law.

In the above cases of *final* decrees, &c., appeals, &c., *shall be allowed.* In what other cases may not appeals be allowed? *In all cases where justice shall require them.* Would an appeal lie from an order, similar to the one made in this cause, in the English Court of Chancery? I am clearly of opinion that it would.

By the Laws of Minnesota, page 64, Sec. 54, it is enacted, that "any party may appeal from *any decree or order of the*

*Court of Chancery*, to the Supreme Court. *Provided*, that within thirty days after the rendition of such order or decree, he shall serve notice of such intended appeal upon the opposite party or his solicitor—one on the clerk of the court where such decree or order was made and entered."

It appears from the record that complainants have done all that can be required of them under the statute to entitle them to the benefits of an appeal.

Our Territorial Legislature was not restrained by the Organic Act, from permitting appeals from orders and decrees *not final.* Courts of Chancery have always held this power, and will continue to exercise it on all proper occasions. And it is the duty of such courts to *allow* and *sustain* appeals from any and all interlocutory orders and decrees *prejudicial* to the *rights* of either party *independent* of any legislative aid upon the subject. Courts of Chancery have been established for the purpose of preventing fraud, and of affording relief against it, not for the infliction of injuries. I find this question clearly settled in the case of *Beach vs. Fulton Bank.* 2 *Wend.* 226. Here the Chancellor denied an application, made by appellants, to open the proofs taken in a cause in which the respondents were complainants, and the appellants were defendants, for the purpose of re-examining a witness produced on the part of the respondents. The motion was denied with costs. It appeared, that since the examination of the witness in Chancery, he had been called to testify in a cause tried in the Superior Court of the city of New York, and on that occasion, disclosed facts which the appellants alleged were material and pertinent to their defence in the cause depending in Chancery, and which the witness had not disclosed on his examination in Chancery. From this order, the defendants appealed, and a motion was made, as in the present case, to dismiss the appeal.

After a thorough examination of the subject, the Court *unanimously* denied the motion.

If it shall be contended that the Legislature has not the power to authorize the granting of appeals from orders *not final*, most certainly this Court has, and will exercise that right.

Suppose an order to be entered in the District Court, in a

Chouteau v. Rice, et. al.

cause which must be decisive of the rights of the parties, and which may work serious injury to one of them. Shall he not be allowed an appeal to this Court, where such order may be examined?

Most certainly he shall.

It is contended, that the order made in this case dissolving the injunction, was made in the exercise of discretionary power, and that therefore an appeal does not lie. The same ground was taken in support of the motion to dismiss the appeal in the case of *Beach vs. Fulton Bank*, above referred to, and to which case I shall make frequent reference, and from. the opinion of the Court therein delivered, many extracts.

If, by discretion, is meant *arbitrary power*, I contend that it does not belong to this Court. It would involve the essence of tyranny.

That discretion which pertains to a Court of Chancery, is a *sound legal discretion*, regulated by the principles of enlightened equity, and it is legitimate for this Court, sitting as a Court of Appeal, to review *any order* made in the exercise of such discretion. Why should the exercise of discretion not be examined as well as the making of a *final* decree?

The Chancellor has no other guide in the making these orders, than an enlightened conscience, regulated by the settled principles of equity.

A discretion, exercised contrary to such principles, will not be recognized by this Court. Had the Court below refused to set aside the *pro confesso* heretofore taken *in this cause*, upon the application of respondents, founded upon an affidavit setting up a meritorious defence, Rice would, like complainants, have been forced to an *appeal* or the abandonment of his. suit.

Submission on his part, to such an order, or refusal, would have been conclusive of his rights. But suppose he *did appeal*, and this Court should have held, as in the present case, that the order was interlocutory and not final, or that such refusal or order was made in the exercise of *discretionary power*, and could not, consequently, be made the *subject of appeal*. In this event, respondents would have been where complainants appear to be—at the *mercy* of their adversaries, in so far

3

as the subject matter of this suit is concerned, and without re-
lief; a result utterly at war with the pure and enlightened
principles which have continued to govern the action of Chan-
cellors in England and America for centuries past.

The real case of complainants, and the supposed case of re-
spondents appear to me to be in direct opposition to the well
established usages of Courts of Chancery, and if carried out,
must amount to a *denial* of justice to the parties.

If this appeal be dismissed on the ground that the reten-
tion of it might establish a practice burdensome to the Court,
I must be permitted to remark that we are not likely to be
greatly oppressed by appeals from questionable orders. A
thorough examination of the history of Courts of Chancery, on
both sides of the Atlantic, will warrant the assertion that this
Court will never be burdened by appeals from doubtful orders
or decrees.

In the case referred to, in 2 *Wend.* 225, Mr. Justice Spen-
cer said he was against dismissing the appeal; and he dispo-
sed of the question as to the order being one from which an
appeal would not lie, by the general declaration, that the right
was given by statute, and when the appeal was interposed, the
order from which it was brought was an existing one. *In* 4*th*
*Johnson's Reports*, 510, the Supreme Court of New York de-
cided, that an appeal lies from an order of the Court of Chan-
cery *refusing* to dissolve an injunction, and decreeing costs
against the defendants.

Mr. Chancellor Kent, in his opinion in the case of *Beach vs.
Fulton Bank*, says:—

"The same question, as to the distinction between orders
from which appeals would or would not lie, that had arisen in
the preceding cases, and which the Court had declined to de-
cide any further than became strictly necessary for the dispo-
sition of the cause before them, met them again in this case,
and found them as unprepared, and as much embarrassed
with the difficulties attending it, as they had been on any for-
mer occasion."

The learned Judge, when he delivered the opinion of the
Court, expressly declined drawing the line of distinction. He
merely decides that the refusal to dissolve an injunction, di-

recting it to be retained and awarding costs to be paid by the party making the application, is an order within the terms of the statute. That in the case of *Buel vs. Street, Spencer J.,* declared, that an appeal would lie where the order affected the rights of the parties or imposed a grievance, and not on a mere *practical* order.

In the case of *Train vs. Waters,* where this question came again under consideration, *Platt, J.,* observed, that he was not prepared to say that an appeal would not lie in any case for *costs only. Spencer, J.,* intimates an opinion, that an appeal would lie in such a case under our statute.

I will here remark, that the Statute of New York, allowing appeals from orders, &c., in Chancery, is not so broad as the Statute regulating such appeals in Minnesota. *See 2 Wend.* 234.

*Kent, C. J.,* continues to remark as follows :—

" I believe I have allowed to most, if not all, of the cases wherein the Court have had occasion to consider the distinction between orders, with regard to the question, whether appeals may or may not be brought on them, and I have attempted to draw from them a general rule to mark the two classes ; but I must confess, that I have closed the examination of them with the same conviction which others have expressed—that it is exceedingly difficult, if not impracticable, to arrive at any satisfactory result.

" Each case, it seems to me, has been decided in a great degree with reference to its own characteristics, and without regard to the application of any principle classifying these orders. If this Court shall now attempt to extract from the various positions laid down in these cases, a general rule for the government of their proceedings, it is a matter of duty that they should not forget that they are fixing limits to a highly prized and valuable right ; and that an unnecessary restriction upon its exercise may, and most probably would, interfere in an essential manner with the administration of justice.

" On the argument of the rule laid down by the Chancellor in the case of *Closen vs. Shotwell,* relative to Writs of Error, and much urged upon our consideration, there is an evident distinction between Writs of Error and Appeals. If it had not been long established by unquestionable authority, the

Court would at once see the necessity of recognizing it. The discretionary powers confided to the Courts of Common Law, are few and unimportant, compared with the immense mass of them which surrounds, and perhaps I might say, constitutes the very being of a Court of Equity.

"The power of issuing injunctions and attachments is, so to speak, the right arm of the Court of Chancery, and the exercise of it in almost every instance, is conceded to be a matter existing in discretion.

"To put every act of this power, be its consequences to parties ever so serious, entirely beyond a review by the court of the last resort, would, in many instances, be a denial of justice, and the surrender of a long used and necessary portion of the jurisdiction of this Court.

"In the case of *Taylor vs. Delancy*, presenting as nearly as any one could, the abstract question of the exercise of discretionary power, it was strongly intimated, that this Court would interfere and relieve where the discretion had been exercised in an unjust manner.

"In the case of a temporary injunction to stay the party from proceeding to trial at law, one of the ablest Judges that ever had 'a seat in this court, was in favor of sustaining the appeal from the order granting it. The question, whether an appeal would or would not lie on an order dissolving or refusing to dissolve an injunction—a matter certainly resting as much in discretion as any that can come before the Chancellor—has been twice raised here. In the one case, the Court declined the question, and in the other, it decided that an appeal would lie on an order refusing to dissolve an injunction, and allowing costs for resisting the application. It is a familiar principle, that questions of costs are confined to the discretion of the Chancellor; yet it has been decisively intimated, that an appeal would be sustained here on an order relating solely to costs. Enough has been shown, it appears to me, without going more at large into this matter, to satisfy us that if we should adopt the broad rule, that no appeal can be entertained here, from an order made by the Court of Chancery, in the exercise of its discretionary powers, we should come in conflict with several of the former decisions of this Court, and depart from the

settled construction of the statute securing the right of appeal.

" Being unable to dispose of the motion before us by applying to it any general rule, it becomes necessary to consider the general character of the order on which the appeal is brought; and the object of the application denied by the Court below, so far, at least, as to determine whether this Court ought to sustain the appeal. We ought not to send the appellants out of Court unheard on the merits of their appeal, without being fully satisfied that they could have no relief here. In case they should show their situation to be such as they represent it, we are then, for the purpose of deciding this motion, to assume that the witness, in order to whose reexamination the defendants applied to the Chancellor to have the proofs opened, had been cross-examined in a proper manner to draw out the facts which they now wish to prove by him ; that since publication passed in the cause below, he has disclosed under oath, in a suit at law, facts which he did not disclose on his examination in Chancery, material and pertinent to the defence of the appellants; and that a seasonable application was made for his further examination. This is the case that the appellants declare they shall present to us on the appeal, and until we investigate its merits, we cannot say that it is not what they represent it to be.

" I cannot doubt, that an order refusing such an application would be a decision affecting the merits of the cause in which it should be made, and a matter of serious grievance to the party against whom it might be entered. If such a case exists, why shall not the aggrieved party find relief in this Court ?

" Not merely because the granting or refusing of the application to the Court below was confided to its discretion; because we have seen that this Court, in repeated instances, has refused to restrict itself by this consideration, and in several cases has sustained appeals on orders emanating from the discretionary powers of the Courts in which they were made.

" Was the application below to the favor of the Court? This is denied by the appellant, and on the assumption which this motion requires us to make, may well be denied.

" I regard it as a matter of right, that a party shall have the full benefit of any defence he may have in a Court of Equity,

which he has not waived by his acts or forfeited by his negli-- gence ; and if, from the peculiar circumstances of the case, the rules of proceeding adopted for ordinary cases, stand in the way of making such defence, the party, I think, may claim of the· Court, that it should conform its proceedings to the peculiar- circumstances of the case. I do not, I am confident, under- value the importance of having established modes of pro- ceeding in all Courts of Law and Equity, and of enforcing· observance of them ; but to withhold right by an undue· regard to the forms by which it is obtained in common: cases, is making the end subservient to the means, and would seem to be, in a Court of Equity, a renunciation of one· of the acknowledged objects of its original institution—that of qualifying and tempering the rigor and sharpness of the com- mon law in special cases, and of supplying that which is unin-- tentionally harsh in the application of a general rule to a par- ticular case.

" I am, therefore, for denying this motion, and hearing the appeal on its merits."

" *Sutherland, J.* Where the party is aggrieved or may be aggrieved by an order made in Chancery, he has the right to appeal. To deny the right, where the order is founded upon the exercise of the discretionary powers of the Court, would be to abrogate appeals in most cases of interlocutory orders. He was of opinion that the appeal should be heard, and that the motion of the respondents ought to be denied."

" Whereupon the motion was *unanimously* denied."

I feel confident, that the Court, in the above case, clearly defined the duty of Appellate Courts in *all* cases of appeals from orders and decrees not final ; and I much regret that this Court has, at the commencement of its judicial duties, depart- ed so widely from the course laid down by the mighty intel- lects engaged in the investigation of the case above referred to. In proceedings *in Chancery*, let us adhere to long estab- lished usages. " Remove not the ancient land marks which thy forefathers have set."

The Supplemental Bill, like the original, charges *fraud in the most positive terms*. With these charges resting upon re-

spondents, it was clearly erroneous to dissolve the injunction.

I am of opinion that this motion should be denied, and the appeal heard upon its merits.