Hague *v.* State, 34 Miss. R., 616.

### Homicide.

Where the record states that the indictment was returned on the 4th of November, during the *October* term, and the indictment appeared on its face to have been found at the *November* term, and nothing in the record identified the indictment on which the indictment was had, a motion in arrest of judgment should be sustained. Laura v. State. 26 Miss. R., 174.

In the absence of all proof of the facts or circumstances attending a homicide, the law presumes it to have been malicious, and therefore murder.[1] But under such circumstances the law never presumes it to have been manslaughter.[2] Such a presumption would be error.

Error to Choctaw circuit court. HARRIS, J.

*Featherston & Orr*, for plaintiff in error.

*T. J. Wharton*, attorney general.

FISHER, J.:

The prisoner was indicted by a grand jury empaneled at the October term, 1853, of the circuit court of Chickasaw county, for the murder of one Harmonious Parker. The venue was at the next succeeding term of the court, changed, upon the application of the prisoner, to the county of Choctaw; and being put upon his trial at the September term, 1855, of the circuit court of said county, he was by the jury found guilty of manslaughter in the first degree, and from the sentence pronounced upon this verdict, he has prosecuted this writ of error.

Although numerous errors relating to the technical objections to the record have been assigned, we nevertheless believe that the whole merits of the case are embraced in the two assignments, which bring under revision the action of the court below in overruling the prisoner's motions in arrest of the judgment, and for a new trial; and these will, therefore, only be noticed.

First, as to the motions in arrest of judgment. The first order upon the minutes in relation to the return of the indictment into court is in the following words:

"The State v. Sidney F. Hague. Murder.

"This day came the grand jury, under the charge of their proper officer, and returned into open court, by the hands of their foreman, a bill of indictment against Sidney F. Hague for the murder of Harmonious Parker, endorsed by their foreman, Thomas J. Buchman, a true bill."

Next follows in the record this recital of the clerk: "And

---

[1] State v. McFall, Addis., 255; State v. Town, Wright, 75; People v. McLeod, 1 Hill, 377; Mitchell v. State, 5 Yerger, 340; Comm. v. York, 9 Metc., 93; Murphy v. State, 37 Ills., 447.

[2] King v. Commonwealth, 2 Va. Cases, 116; Short v. State, 7 Yerger, 710; Young v. State, 11 Humph., 200.

afterwards, to wit, on the same day, it being the 4th day of November, 1853, and also a day of said October term of said court, the following arraignment and plea was entered on the minutes of said court, to wit." Immediately following this recital is the indictment upon which the prisoner was tried, and it appears upon its face to have been found, not at the October term, but at the November term of the said court; and it may be further remarked, that there is nothing in the record showing, with that degree of certainty required in such cases, that it is the same indictment which was returned into court by the grand jury. The error, therefore, being palpable, the case falls completely within the rule laid down in the case of Laura v. The State, 26 Miss. R., 174; and the motion in arrest of judgment should have been sustained by the court below.

Under the view which we have taken of the first assignment, the other alleged error is only important to show that the case was tried upon its merits in the court below; and the prisoner, having been acquitted of the charge of murder, will be entitled to his discharge, unless it shall appear that an indictment for manslaughter can be hereafter preferred against him.

The testimony connecting the prisoner with the homicide was entirely circumstantial; but it was, nevertheless, of that conclusive character which pointed to him, with almost unerring certainty, as the only person who could have committed the deed. Indeed, the question is not as to the person who committed the act, but as to the grade of the crime, if any.

It is not necessary to notice, in detail, the testimony, but only to state the prominent facts established.

The killing occurred near a spring in the woods, and near the residence of the prisoner, on a Sunday evening, between seven and eight o'clock, in the month of September, 1853. It appears that the deceased, a short time after sunset of that evening, rode up to the residence of old Mr. Hague, with whom the prisoner resided, and inquiring for the prisoner was informed that he was in the house. Whereupon the deceased requested the old man to call the prisoner out. Some reluctance being manifested, the deceased observed, "If you don't call him, I will." The prisoner soon thereafter came out of the house, went to the

deceased; they appeared to meet on friendly terms, conversed a few minutes, and both started off together to the spring, about one or two hundred yards in the woods. They were seen together near the spring, and near where the body of the deceased was found. Soon thereafter a noise was heard indicating distress, which, alarming persons in the vicinity, caused them to go to the spring to ascertain the cause of distress, and on arriving there it was ascertained that the deceased had been stabbed in the breast, from which he died in a few moments. Nothing then appears to have been seen of the prisoner, though he appears to have been at home at ten o'clock *that* night. It also appears that blood was discovered in several places, on the leaves, on the ground, and on the bushes, and that about twenty-two paces from the blood a pistol was found; but what became of this pistol does not appear. One was exhibited in court which resembled one seen in the possession of the prisoner the day before the killing, but no effort was made to prove that this was the pistol found on the ground. Indeed, the inference is that it was not. This is, in substance, the testimony immediately connected with the killing. The prosecution, however, introduced a number of witnesses who proved threats made by the prisoner as far back as the month of May, and, at subsequent times, similar threats were also shown to have been made by the deceased. It was, indeed, clearly established that the parties were very hostile to each other until a short time before the killing, when it appears they became reconciled.

It further appeared that the deceased, the night before the killing, held a conversation with one Wilson; that Wilson warned the deceased against the prisoner; told deceased not to trust him; that deceased remarked that they had made friends, but that he intended to have nothing to do with the prisoner.

Again, it appeared that some time in the afternoon of the day of the killing the deceased was at the house of a brother of the prisoner, living in the immediate vicinity; that this brother, the deceased, and one Joy went to Joy's house; that the deceased drank twice, while there, of whiskey; and took away with him a bottle of it. That the deceased, Joy, and the prisoner's brother left Joy's together; that on reaching the brother's

house, the deceased was invited to remain to supper but declined, and went on to the house of the prisoner, when he was invited out, as already stated.

The jury, by their verdict, having acquitted the prisoner of murder, have in substance declared that he was not actuated by malice in committing the homicide. The effect of the verdict is to throw out of view all the antecedent menaces of the prisoner, and to put the merits of the case exclusively upon the testimony immediately connected with the killing, and, thus narrowed down, the case must be considered. The homicide being established, as well as the prisoner's agency in its commission, the law, in the absence of any proper explanation, would treat the crime as murder; or, in other words, would presume a fact; that is, that malice had prompted the party to do the deed. But as this is a legal presumption, originating in necessity, it but accords with reason that it should be indulged only while the necessity exists. As a general rule, all legal presumptions must yield to fact, or, in other words, to testimony which rebuts them. What, then, is the effect of the verdict in this case? Most clearly that the testimony outweighs the legal presumption. The law presumes murder in certain cases, but it never presumes manslaughter when the indictment is for murder, for the reason that manslaughter is a defense against a charge for murder, and can only be established by testimony. The law presumes that every man intends that which is the natural result of his acts, and if he kill another that he so intended. It never presumes that a man kills another in the heat of passion, or under the influence of great provocation; but these are facts to be established by testimony, and when so established, are held sufficient to rebut the presumption of malice, and are consequently a good defense against the charge of murder, although the party be guilty of a less crime. Legal presumptions out of the question, and looking alone to the testimony immediately connected with the killing, it is simply impossible to form any correct opinion on the subject; and if this cannot be done, how is it possible to convict a party of manslaughter in the first degree, when the crime can only be ascertained by comparing it with the facts proved? The circumstances are as strong, if not

stronger, to show that the deceased was the aggressor in the difficulty, if difficulty it can be called, than they are to implicate the prisoner. The deceased, not a day before, was warned against trusting the prisoner, and he then declared his intention to have nothing to do with him. If sincere in what he then said, why did he go to the house of the prisoner at an unseasonable hour, when visiting could not be presumed to have been his business, and manifest such anxiety to see the prisoner? The bottle of whiskey may have been provided for the very purpose of decoying the prisoner to the spring, which at that hour was a secluded spot. These presumptions, weak as they may appear, are nevertheless as strong as any presumptions, aside from the act of killing itself, which can be indulged against the prisoner. The pistol, which was found on the ground, and not shown to be the prisoner's, may have been one of the two of which the deceased was proven to have been the owner. This weapon may have been the origin of the difficulty. It is not probable that it was drawn by the prisoner; for, if so, he would probably have used it, or certainly would not have left it on the ground, especially if it could have been easily identified as his property.

The verdict, in our opinion, is not sustained by the evidence, and the judgment must, therefore, be reversed. Judgment arrested, and prisoner discharged.