THE STATE v. ZEIBART.

1. **Criminal Law:** JOINT INDICTMENT. In a joint indictment for murder, it is not necessary that the instrument shall distinguish between the principal and the accessory, where both are charged with *intent* to kill.

2. ———: INSTRUCTION: QUESTION OF FACT. An instruction to the effect that "when one person assaults another with a deadly weapon, or an instrument likely to produce death when used in the manner in which it was used, the law presumes malice in the absence of proof to the contrary:" *Held*, not vulnerable to objection when the jury were further instructed that the use of a deadly weapon was a question of fact for their determination.

3. ———: RESISTANCE OF AN OFFICER: PRESUMPTION OF MALICE. The presumption of malice and all the consequences of the crime attach equally to all who aid, abet, or take part in the act of resistance of an officer, and each is accountable for the deeds of all engaged therein.

4. ———: MALICE AFORETHOUGHT. Intent to kill is inferred from the deliberate, violent use of a deadly weapon, and such intent to kill constitutes malice aforethought.

5. ———: ———: RESISTANCE OF AN OFFICER. Forcible resistance to an officer, resulting in his death, would imply malice aforethought only when those resisting had knowledge that he was acting in an official capacity.

6. ———: RESISTANCE OF AN OFFICER: EVIDENCE. Parol evidence is competent to show that the person injured was acting as an officer.

*Appeal from Floyd District Court.*

TUESDAY, DECEMBER 22.

THE defendant was indicted, tried and convicted for the crime of murder, and sentenced to eighteen years in the penitentiary. He appeals.

*G. F. Boulton* and *C. S. Otis,* for the appellant.

*M. E. Cutts, Attorney-General,* for the State.

COLE, J.—I. The indictment is as follows: " The grand jury of the county of Floyd, in the name and by the authority of the State of Iowa, accuse Frederick Zeibart and Julius Zeibart of the crime of murder, committed as follows: The said Frederick Zeibart and Julius Zeibart, on the seventh day of December, in the year of our Lord one thousand eight hundred and seventy-two, in the county aforesaid, in and upon one S. O. Page, peacefully and lawfully then and there being, feloniously, willfully, and of their malice aforethought, did make an assault, and they, the said Frederick Zeibart and Julius Zeibart, with a certain knife, with which they were then and there feloniously armed, the said S. O. Page in and upon the right side of the head, just above the right temple of him, the said S. O. Page, then and there feloniously, willfully and of their malice aforethought, did strike and thrust, giving to the said

S. O. Page then and there with the knife aforesaid, in and upon the aforesaid right side of the head just above the right temple of him, the said S. O. Page, one mortal wound of the width of three-quarters of an inch and of the depth of one and one-half inches, of which said mortal wound the said S. O. Page, from the said 7th day of December, A. D. 1872, until the 14th day of February, A. D. 1873, at Charles City, in said county, did languish and languishingly did live, on which said 14th day of February, A. D. 1873, the said S. O. Page, at Charles City, in the county aforesaid, died of the said mortal wound so inflicted by the said Frederick Zeibart and Julius Zeibart, as aforesaid; and so the grand jury say the said Frederick Zeibart and Julius Zeibart, him, the said S. O. Page, in the manner and by the means aforesaid, feloniously, willfully, and of their malice aforethought, did kill and murder, contrary to the statute in such case made and provided."

To this indictment the defendant, Frederick Zeibart, who alone was tried, demurred, because:

*First.* It is not direct or certain as regards the party charged.

*Second.* The particular circumstances of the offense charged are not shown by the indictment.

*Third.* It does not appear therefrom that any injury was inflicted upon S. O. Page with intent to injure or murder him.

*Fourth.* It does not state facts sufficient to constitute the offense charged.

This demurrer was overruled, and thereon the first error is assigned.

The counsel for appellant, in their argument of this demurrer, and also of the error assigned, upon the refusal of the first and second instructions asked by them, discuss the question of principal and accessory and the effect of our statute upon the averments and evidence necessary to charge and convict one as an accessory. In our view that question is not involved. The defendants are indicted for having jointly committed the crime, and there is nothing in the indictment or testimony tending to show that either was only an accessory. Nor do we deem it necessary

1. CRIMINAL LAW; joint indictment.

that the indictment shall charge which defendant held the knife, or in which hand it was held. The intent to kill is only necessary to constitute murder in the first degree.

II. In order to a correct understanding of the instructions discussed, it is necessary to state an outline of the case as the evidence tended to establish it. The two defendants indicted are brothers, and they, with another brother, were in Charles City on the night of the occurrence; they became involved in a controversy with some boys who were engaged in bell-ringing for rival auctions, and one of the brothers kicked one of the boys; this was brought to the attention of the deceased, who was acting marshal of Charles City; he went to the brothers and asked them to go home, which was declined; afterwards he undertook to arrest one of them, and this was resisted by the defendants. Frederick obtained one or more clubs, and the deceased got them from him, and he then endeavored to procure a butcher-knife from a meat market, but was refused. In the course of the controversy both defendants are shown to have struck the deceased, and one of them—from the evidence the jury might find it was Frederick, struck him above the right temple with a knife, and the blade was broken off, and a piece about one-fourth of an inch in width and one and five-eights inches in length, was left in the brain or head of the deceased. The defendants, however, were arrested and committed to jail, and the marshal, unconscious of the extent or character of his wound, continued about his business that night and for several days. He afterwards grew worse, when the broken blade was discovered and extracted, and he died in about nine weeks.

The first instruction, given at request of the District Attorney, defines murder in the second degree, and it is not vulnerable to the objections to it, especially when taken in connection with the further charge of the court upon the same subject. The second, given upon the same request, is as follows: " When one person assaults another with a deadly weapon, or an instrument likely to produce death when used in the manner in which it was used, the law presumes malice in the absence of proof to the con-

2. ———: instruction: question of fact.

trary." This is here objected to because there was no deadly weapon used, or one likely to produce death. The law of the instruction is not controverted by the appellant's counsel. The answer to the objection is, that the court left the question of fact as to the use of a deadly weapon to the jury, and did not instruct them that the weapon used was or was not a deadly weapon.

III. The court gave this instruction: "3. To sustain the charge in the indictment, the State must show by the evidence beyond a reasonable doubt that S. O. Page was struck on the head by one of the defendants named in the indictment, a blow with a knife substantially as set out in the indictment, and that S. O. Page died in this county in consequence of the blow so inflicted, and that the blow was struck with malice aforethought."

3. ———: resistance of an officer: presumption of malice.

This is objected to because it says "that S. O. Page was struck on the head by *one of the defendants* named," and is not limited to this defendant. But it must be remembered that the evidence tends to show, and in this respect is without conflict, that the crime was committed in resisting an officer of justice. In such cases, the presumption of malice and the consequences of the crime attach equally to all who knowingly aid, abet, or take part in the act of resistance. Greenlf. on Ev., § 146. While engaged in their unlawful resistance of the officer, the two defendants were as one, and each was accountable not only for his own acts, but for the acts of the other, done in the execution of their unlawful resistance.

IV. "Malice aforethought may be implied from the kind of weapon used; and the manner and circumstances attending its use, as the place where the wound was inflicted, the strength or severity of the blow given, and if the weapon used was one which, taking into consideration the place where the blow was struck and its evident force would produce a wound which would be likely to result in death, the blow would imply malice aforethought, and if death resulted it would be murder." This instruction was given by the court, and it is urged that it is erroneous for that "malice *aforethought*" cannot be implied from any such facts as

4. ———: malice aforethought.

stated. But the law is well settled that malice is implied from every case of intentional homicide; and this malice so implied must be malice aforethought, because it will sustain a conviction for murder, which requires malice aforethought, unless the accused rebuts the malice, or such negation arises out of the evidence produced against him to prove the homicide and the circumstances attending it. We conclude that the malice implied by the use of a deadly weapon is that malice which will sustain a conviction for murder, and that, as we have seen, is malice aforethought. In other words, the *intent to kill* is inferred from the deliberate, violent use of a deadly weapon, and an intent to kill is malice aforethought.

1. The following authorities show that the law implies malice from the mere fact of the killing, and it devolves upon the defendant to rebut the presumption in order to reduce the offense from murder to manslaughter: *Murphy v. The People*, 37 Ill., 447; *The State v. Brown*, 12 Minn., 538; *Clarke v. The State*, 35 Georgia, 75; *The State v. McDonnell*, 32 Vt., 491; *Hayne v. The State*, 34 Miss., 616; *The State v. Gilleck*, 7 Iowa, 218; *The State v. Knight*, 43 Maine, 11; *The State v. Johnson*, 3 Jones, (N. C.,) 266; *Pennsylvania v. McFall*, Addison, 253.

2. And the following cases very directly decide that the use of a deadly weapon is evidence of malice aforethought: 1 Wheaton Criminal Law, § 944; *Com. v. Drew*, 4 Mass., 396; *The State v. Merrill*, 2 Dev., (N. C.,) 269; *Beauchamp v. The State*, 6 Blackf. 249; *Kilpatrick v. The State*, 31 Penn., 198; *The State v. Decklots*, 19 Iowa, 447; *Brains v. The State*, 6 Eng. (Ark.,) 455; 1 Greenleaf on Ev., § 14; *The State v. Gilleck*, 7 Iowa, 287.

V. "If S. O. Page was acting as city marshal of the city of Charles City, and while in the lawful discharge of his duties as such was attempting to arrest the defendant and Julius Zeibart, and they unlawfully resisted the arrest, and during that resistance and in furtherance thereof one of them struck S. O. Page, on the head with a knife, and his death resulted from the wound so received, then the blow would imply malice aforethought from the unlawful resist-

ance and the blow, if it was one which was imminently dangerous to life, and all who were engaged in the unlawful resistance of the officer would be guilty of murder." This was the fifth instruction given by the court, and upon which error is assigned. What we have above said, in discussing the third point and instruction, sufficiently disposes of the question upon the subjects of malice aforethought, and of the guilt of all knowingly joining in the resistance. See, as to the last, 3 Greenl. Ev., § 146, *supra*, and § 123 and cases cited in the notes to each. 1 Russ. on Cr. 532-538, and also 592-635. But it is further urged that this defendant had no knowledge that Page was city marshal, and hence the instruction ought not to have been given. As we read the evidence however, it is quite sufficient to satisfy us that the defendants had knowledge that Page was city marshal, and was then so acting—this can hardly be doubted. And in this connection the eighth instruction, given, shows that if that fact was not proved, the instruction under consideration, worked no prejudice. It is as follows: "8. But if no such notice (to make an arrest for a public offense) was given, and defendants did not know that Page was attempting and intending only to arrest them, and if without malice express or implied, they or either of them inflicted the wound which resulted in the death of S. O. Page, then they would be guilty of manslaughter only, and not of murder."

Other objections are made to other instructions; but since the discussion already made disposes of the main grounds thereof, they need not be further noticed.

VI. The state asked a witness whether Page was acting as city marshal at the time. This was objected to because irrelevant to the issues, and not the best evidence, and the objection was overruled. The official character of Page at that time became material, and it is well settled that record evidence of official character in such cases is not necessary, but it may be shown by evidence that he was so acting was such officer *de facto*. There was no error either in rejecting evidence of the declarations of the deceased; they were not claimed to be dying declarations, or against his interest.

6. ——: resistance of an officer: evidence.

We are asked to reduce the sentence, which was for imprisonment eighteen years. The Attorney-General in his argument seems to concur in the request. Under all the circumstances we are agreed in so modifying the term as to make the imprisonment for a term of nine years. With this modification the judgment is

AFFIRMED.